MUSICK, PEELER & GARRETT ET AL. *v.* EMPLOYERS INSURANCE OF WAUSAU ET AL.

No. 92–34.   Argued March 1, 1993—Decided June 1, 1993

*Charles A. Bird* argued the cause for petitioners. With him on the brief were *Robert G. Steiner, Alvin M. Stein,* and *Mark I. Schlesinger.*

*Theodore B. Olson* argued the cause for respondents. *Lawrence H. Nagler, Nanci E. Murdock, Robert M. Zabb,* and *Darrin F. Meyer* filed a brief for respondents Employers Insurance of Wausau et al. *Andrew J. Pincus, Kenneth S. Geller, William J. Reifman, Michael A. Vatis, Leonard P. Novello, Richard I. Miller,* and *Dean I. Ringel* filed a brief for respondents Peat Marwick Main & Co. et al.

*Robert A. Long, Jr.,* argued the cause for the Securities and Exchange Commission as *amicus curiae* urging affirmance. With him on the brief were *Acting Solicitor General Bryson, Deputy Solicitor General Mahoney, Michael R. Dreeben, Paul Gonson, Jacob H. Stillman, Eric Summergrad,* and *Judith R. Starr.**

---

*Paul F. Bennett, David B. Gold, William S. Lerach,* and *Kevin P. Roddy* filed a brief for the National Association of Securities and Commercial Law Attorneys as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Institute of Certified Public Accountants by *Louis A. Craco* and *Russell*

JUSTICE KENNEDY delivered the opinion of the Court.

Where there is joint responsibility for tortious conduct, the question often arises whether those who compensate the injured party may seek contribution from other joint tortfeasors who have paid no damages or paid less than their fair share. In this case we must determine whether defendants in a suit based on an implied private right of action under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission (a 10b–5 action) may seek contribution from joint tortfeasors. Without addressing the merits of the claim for contribution in this case, we hold that defendants in a 10b–5 action have a right to seek contribution as a matter of federal law.

I

Cousins Home Furnishings, Inc., made a public offering of its stock in December 1983. The stock purchasers later brought a class action against Cousins, its parent company, various officers and directors of Cousins, and two lead underwriters. The plaintiffs alleged the stock offering was misleading in material respects, in violation of §§ 11 and 12 of the Securities Act of 1933 (1933 Act), 48 Stat. 82, 84, 15 U. S. C. §§ 77k and 77l, § 10(b) of the Securities Exchange Act of 1934 (1934 Act), 48 Stat. 891, 15 U. S. C. § 78j(b), and certain state laws. The named defendants settled with the plaintiffs for $13.5 million. Respondents, who insured most of the named defendants, funded $13 million of the settlement. Subrogated to the rights of their insureds, respondents brought this lawsuit seeking contribution from petitioners, who were the attorneys and accountants involved in the public offering. Respondents' complaint alleged these pro-

G. Ryan; for the First Boston Corporation et al. by Stuart J. Baskin and Thomas S. Martin; and for the Securities Industry Association by Barbara Moses, Sam Scott Miller, Barry S. Augenbraun, and William A. Fitzpatrick.

fessionals had joint responsibility for the securities violations and were liable for contribution under various theories, including a right to contribution based on the 10b–5 action central to the complaint in the original class suit.

In proceedings before the United States District Court for the Southern District of California and the United States Court of Appeals for the Ninth Circuit, the parties disputed the principles for determining whether the insureds had paid more than their fair share of liability in the class settlement, with scant attention being paid to the underlying issue whether liability in a 10b–5 action is accompanied by any right to contribution at all. This lack of attention is understandable, for the existence of the 10b–5 right to contribution is well established in the Ninth Circuit, *Smith* v. *Mulvaney*, 827 F. 2d 558, 560 (1987), as well as in a number of other Circuits, *In re Jiffy Lube Securities Litigation*, 927 F. 2d 155, 160 (CA4 1991); *Sirota* v. *Solitron Devices, Inc.*, 673 F. 2d 566, 578 (CA2), cert. denied, 459 U. S. 838 (1982); *Huddleston* v. *Herman & MacLean*, 640 F. 2d 534, 557–559 (CA5 1981), aff'd in part, rev'd in part on other grounds, 459 U. S. 375 (1983); *Heizer Corp.* v. *Ross*, 601 F. 2d 330, 331–334 (CA7 1979).

Some three months after the Court of Appeals ruled in favor of respondents, 954 F. 2d 575 (CA9 1992), the United States Court of Appeals for the Eighth Circuit created a conflict on the basic issue whether defendants in a 10b–5 action have a right to contribution. In light of our decisions on contribution in other areas of federal law, the Eighth Circuit ruled that there can be no implied cause of action for contribution in a 10b–5 action. *Chutich* v. *Touche Ross & Co.*, 960 F. 2d 721, 724 (1992). Petitioners requested that we resolve the conflict among the Circuits. We granted their petition for a writ of certiorari on the sole question presented: "Whether federal courts may imply a private right to contribution in Section 10(b) of the Securities Exchange Act of

1934 and Rule 10b–5 of the Securities [and] Exchange Commission," Pet. for Cert. i.    506 U. S. 814 (1992).

## II

Requests to recognize a right to contribution for defendants liable under federal law are not unfamiliar to this Court. Twice we have declined to recognize an action for contribution under federal laws outside the arena of securities regulation.    In *Northwest Airlines, Inc.* v. *Transport Workers*, 451 U. S. 77 (1981), we held that an employer had no right to contribution against unions alleged to be joint participants with the employer in violations of the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964.    Later that same Term, in *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U. S. 630 (1981), we determined that there is no right to contribution for recovery based on violation of § 1 of the Sherman Act.

On the other hand, we endorsed a nonstatutory right to contribution among joint tortfeasors responsible for injuring a longshoreman in *Cooper Stevedoring Co.* v. *Fritz Kopke, Inc.*, 417 U. S. 106 (1974).    We have been careful to note that *Cooper* does not stand for the proposition that there is a general right to contribution under federal law.    *Northwest Airlines, supra*, at 96–97.    Indeed, the rule announced in *Cooper* represented an exercise of our authority to provide just and equitable remedies for cases within our admiralty jurisdiction, a jurisdiction in which the federal courts have had historic, well-recognized responsibility for the elaboration of legal doctrine.    See *United States* v. *Reliable Transfer Co.*, 421 U. S. 397, 409 (1975).    For our purposes, therefore, *Cooper* is less instructive than our decisions in *Texas Industries* and *Northwest Airlines*.    But the instruction we receive from the latter two cases is that they are distinguishable from, rather than parallel to, the matter now before us.

The federal interests in both *Texas Industries* and *Northwest Airlines* were defined by statutory provisions that were

express in creating the substantive damages liability for which contribution was sought. Recognizing that the applicable statutes did not "implicate 'uniquely federal interests' of the kind that oblige courts to formulate federal common law," *Texas Industries*, 451 U. S., at 642, we asked whether Congress "expressly or by clear implication" envisioned a contribution right to accompany the substantive damages right created, *id.*, at 638, or, failing that, whether Congress "intended courts to have the power to alter or supplement the remedies enacted," *id.*, at 645. See also *Northwest Airlines, supra*, at 91 and 97. But these inquiries are not helpful in the present context. The private right of action under Rule 10b–5 was implied by the Judiciary on the theory courts should recognize private remedies to supplement federal statutory duties, not on the theory Congress had given an unequivocal direction to the courts to do so. *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U. S. 723, 730, 737 (1975). Thus, it would be futile to ask whether the 1934 Congress also displayed a clear intent to create a contribution right collateral to the remedy. See *Franklin* v. *Gwinnett County Public Schools*, 503 U. S. 60, 76 (1992); *id.*, at 71 (SCALIA, J., concurring).

If *Texas Industries* and *Northwest Airlines* are not controlling, petitioners tell us, then the precedents on which those cases were based do control. Those authorities caution against the creation of new causes of action. *Universities Research Assn., Inc.* v. *Coutu*, 450 U. S. 754, 770 (1981); *Transamerica Mortgage Advisors, Inc.* v. *Lewis*, 444 U. S. 11, 15–16 (1979); *Touche Ross & Co.* v. *Redington*, 442 U. S. 560, 575–577 (1979). They teach that the creation of new rights ought to be left to legislatures, not courts. And, petitioners remind us, whether the right of a tortfeasor to seek contribution from those who share, or ought to share, joint liability is recognized by statute, see, *e. g.*, Cal. Civ. Proc. Code Ann. §§ 875–880 (West 1980 and Supp. 1993); Tex. Civ. Prac. & Rem. Code Ann. §§ 32.001 and 32.002 (1986), or

as a matter of common law, see, *e. g., Goldman* v. *Mitchell-Fletcher Co.,* 292 Pa. 354, 364–365, 141 A. 231, 234–235 (1928); *Davis* v. *Broad Street Garage,* 191 Tenn. 320, 325, 232 S. W. 2d 355, 357 (1950), in both instances the right is thought to be a separate or independent cause of action. Cf. *Northwest Airlines, supra,* at 87, n. 17; Restatement (Second) of Torts § 886A (1979).

This argument, like the argument based on *Texas Industries* and *Northwest Airlines,* would have much force were the duty to be created one governing conduct subject to liability under an express remedial provision fashioned by Congress, or one governing conduct not already subject to liability through private suit. That, however, is not the present state of the jurisprudence we consider here. The parties against whom contribution is sought are, by definition, persons or entities alleged to have violated existing securities laws and who share joint liability for that wrong under a remedial scheme established by the federal courts. Even though we are being asked to recognize a cause of action that supports a suit against these parties, the duty is but the duty to contribute for having committed a wrong that courts have already deemed actionable under federal law. The violation of the securities laws gives rise to the 10b–5 private cause of action, and the question before us is the ancillary one of how damages are to be shared among persons or entities already subject to that liability. Having implied the underlying liability in the first place, to now disavow any authority to allocate it on the theory that Congress has not addressed the issue would be most unfair to those against whom damages are assessed.

We must confront the law in its current form. The federal courts have accepted and exercised the principal responsibility for the continuing elaboration of the scope of the 10b–5 right and the definition of the duties it imposes. As we recognized in a case arising under § 14(a) of the 1934 Act, 15 U. S. C. § 78n(a), "where a legal structure of private statutory

rights has developed without clear indications of congressional intent," a federal court has the limited power to define "the contours of that structure." *Virginia Bankshares, Inc.* v. *Sandberg*, 501 U. S. 1083, 1104 (1991). As to this proposition we were unanimous. See *ibid.* (SOUTER, J., joined by REHNQUIST, C. J., and WHITE, O'CONNOR, and SCALIA, JJ.); *id.*, at 1114 (KENNEDY, J., joined by Marshall, BLACKMUN, and STEVENS, JJ., concurring in part and dissenting in part) ("Where an implied cause of action is well accepted by our own cases and has become an established part of the securities laws . . . we should enforce it as a meaningful remedy unless we are to eliminate it altogether"). See also *Blue Chip Stamps, supra*, at 737 (recognizing the authority of federal courts to define "the contours of a private cause of action under Rule 10b–5" and "to flesh out the portions of the law with respect to which neither the congressional enactment nor the administrative regulations offer conclusive guidance").

We are not alone in recognizing a judicial authority to shape, within limits, the 10b–5 cause of action. The existence of that action, and our cumulative work in its design, have been obvious legislative considerations in the enactment of two recent federal statutes. The first is the Insider Trading and Securities Fraud Enforcement Act of 1988, Pub. L. 100–704, 102 Stat. 4680, which added the insider trading prohibition of § 20A to the 1934 Act. See 15 U. S. C. § 78t–1. Section 20A(d) states that "[n]othing in this section shall be construed to limit or condition . . . the availability of any cause of action implied from a provision of this title." The second statute is the recent congressional enactment respecting limitations periods for 10b–5 actions. Following our resolution two Terms ago of a difficult statute of limitations issue for 10b–5 suits, see *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U. S. 350 (1991), Congress intervened by limiting the retroactive effect of our decision, and the caution in its intervention is instructive. In

an approach parallel to the one it adopted for the insider trading statute, Congress did no more than direct the applicable "limitation period for any private civil action implied under section 78j(b) of this title [§ 10(b) of the 1934 Act] that was commenced on or before June 19, 1991 [the day prior to issuance of *Lampf, Pleva*]." 15 U. S. C. § 78aa–1 (1988 ed., Supp. III).

We infer from these references an acknowledgment of the 10b–5 action without any further expression of legislative intent to define it. See *Herman & MacLean v. Huddleston,* 459 U. S. 375, 384–386 (1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U. S. 353, 378–382 (1982). Indeed, the latter statute, § 78aa–1, not only treats the 10b–5 action as an accepted feature of our securities laws, but avoids entangling Congress in its formulation. That task, it would appear, Congress has left to us.

## III

We now turn to the question whether a right to contribution is within the contours of the 10b–5 action. The parties have devoted considerable portions of their briefs to debating whether a rule of contribution or of no contribution is more efficient or more equitable. Just as we declined to rule on these matters in *Texas Industries* and *Northwest Airlines,* we decline to do so here. Our task is not to assess the relative merits of the competing rules, but rather to attempt to infer how the 1934 Congress would have addressed the issue had the 10b–5 action been included as an express provision in the 1934 Act. See *Lampf, Pleva, supra,* at 359; *Ernst & Ernst v. Hochfelder,* 425 U. S. 185, 200–201 (1976). We do this not as an exercise in historical reconstruction for its own sake, but to ensure that the rules established to govern the 10b–5 action are symmetrical and consistent with the overall structure of the 1934 Act and, in particular, with those portions of the 1934 Act most analogous to the private 10b–5 right of action that is of judicial creation. Although

we have narrowed our discretion in this regard over the years, our goals in establishing limits for the 10b–5 action have remained the same: to ensure the action does not conflict with Congress' own express rights of action, *id.*, at 210, to promote clarity, consistency, and coherence for those who rely upon, or are subject to, 10b–5 liability, cf. *Blue Chip Stamps*, 421 U. S., at 737–744, and to effect Congress' objectives in enacting the securities laws, *Santa Fe Industries, Inc.* v. *Green*, 430 U. S. 462, 477–478 (1977).

Inquiring about what a given Congress might have done, though not a promising venture as a general proposition, does in this case yield an answer we find convincing. It is true that the initial step, drawing some inference of congressional intent from the language of § 10(b) itself, *id.*, at 472; *Ernst & Ernst, supra*, at 197, yields no answer. The text of § 10(b) provides little guidance where we are asked to specify elements or aspects of the 10b–5 apparatus unique to a private liability arrangement, including a statute of limitations, *Lampf, Pleva, supra*, at 359, a reliance requirement, *Basic Inc.* v. *Levinson*, 485 U. S. 224, 243 (1988), a defense to liability, *Bateman Eichler, Hill Richards, Inc.* v. *Berner*, 472 U. S. 299 (1985), or a right to contribution. Having made no attempt to define the precise contours of the private cause of action under § 10(b), Congress had no occasion to address how to limit, compute, or allocate liability arising from it.

There are, however, two sections of the 1934 Act, §§ 9 and 18 (15 U. S. C. §§ 78i and 78r), that, as we have noted, are close in structure, purpose, and intent to the 10b–5 action. *Lampf, Pleva, supra*, at 360–361. See also *Basic Inc., supra*, at 243; *Bateman Eichler, supra*, at 316, n. 28; *Ernst & Ernst, supra*, at 209, n. 28. Each confers an explicit right of action in favor of private parties and, in so doing, discloses a congressional intent regarding the definition and apportionment of liability among private parties. For two distinct reasons, these express causes of action are of particular significance in determining how Congress would have re-

solved the question of contribution had it provided for a private cause of action under § 10(b). First, §§ 9 and 18 are instructive because both "target the precise dangers that are the focus of § 10(b)," *Lampf, Pleva, supra,* at 360, and the intent motivating all three sections is the same—"to deter fraud and manipulative practices in the securities markets, and to ensure full disclosure of information material to investment decisions," *Randall* v. *Loftsgaarden,* 478 U. S. 647, 664 (1986).

Second, of the eight express liability provisions contained in the 1933 and 1934 Acts, §§ 9 and 18 impose liability upon defendants who stand in a position most similar to 10b-5 defendants for the sake of assessing whether they should be entitled to contribution. All three causes of action impose direct liability on defendants for their own acts as opposed to derivative liability for the acts of others; all three involve defendants who have violated the securities law with scienter, *Ernst & Ernst, supra,* at 209, n. 28; all three operate in many instances to impose liability on multiple defendants acting in concert, 3 L. Loss, Securities Regulation 1739–1740, n. 178 (2d ed. 1961); and all three are based on securities provisions enacted into law by the 73d Congress. The Acts' six other express liability provisions, on the other hand, stand in marked contrast to the implied § 10 remedy: § 15 of the 1933 Act (15 U. S. C. § 77o) and § 20 of the 1934 Act (15 U. S. C. § 78t) impose derivative liability only; §§ 11 and 12 of the 1933 Act (15 U. S. C. §§ 77k and 77*l*) and § 16 of the 1934 Act (15 U. S. C. § 78p) do not require scienter in all instances, see *Ernst & Ernst, supra,* at 208; *Kern County Land Co.* v. *Occidental Petroleum Corp.,* 411 U. S. 582, 595 (1973); § 12 of the 1933 Act and § 16 of the 1934 Act do not often create joint defendant liability, see *Pinter* v. *Dahl,* 486 U. S. 622, 650 (1988); *Kern County, supra,* at 591; and § 20A of the 1934 Act (15 U. S. C. § 78t–1) was not an original liability provision in that Act, having been added to the securities laws in 1988, see *Lampf, Pleva,* 501 U. S., at 361.

Sections 9 and 18 contain nearly identical express provisions for a right to contribution, each permitting a defendant to "recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment." 15 U. S. C. §§ 78i(e) and 78r(b). These were forward-looking provisions at the time. The course of tort law in this century has been to reverse the old rule against contribution, but this movement has been confined in large part to actions in negligence. 3 F. Harper, F. James, & O. Gray, Law of Torts § 10.2, p. 42, and n. 10 (2d ed. 1986). The express contribution provisions in §§ 9 and 18 were, and still are, cited as important precedents because they permit contribution for intentional torts. See *id.*, § 10.2, p. 43, and n. 11; Ruder, Multiple Defendants in Securities Law Fraud Cases, 120 U. Pa. L. Rev. 597, 650–651 (1972). We think that these explicit provisions for contribution are an important, not an inconsequential, feature of the federal securities laws and that consistency requires us to adopt a like contribution rule for the right of action existing under Rule 10b–5. Given the identity of purpose behind §§ 9, 10(b), and 18, and similarity in their operation, we find no ground for ruling that allowing contribution in 10b–5 actions will frustrate the purposes of the statutory section from which it is derived.

Our conclusion is consistent with the rule adopted by the vast majority of Courts of Appeals and District Courts that have considered the question. See, *e. g., In re Jiffy Lube Securities Litigation,* 927 F. 2d, at 160; *Smith* v. *Mulvaney,* 827 F. 2d, at 560; *Sirota* v. *Solitron Devices, Inc.,* 673 F. 2d, at 578; *Huddleston* v. *Herman & MacLean,* 640 F. 2d, at 557–559; *Heizer Corp.* v. *Ross,* 601 F. 2d, at 331–334; *In re National Student Marketing Litigation,* 517 F. Supp. 1345, 1346–1349 (DC 1981); *B & B Investment Club* v. *Kleinert's, Inc.,* 391 F. Supp. 720, 724 (ED Pa. 1975); *Globus, Inc.* v. *Law Research Service, Inc.,* 318 F. Supp. 955, 957–958 (SDNY 1970), aff'd *per curiam,* 442 F. 2d 1346 (CA2), cert. denied,

404 U. S. 941 (1971). We consider this to be of particular importance because in the more than 20 years since a right to contribution was first recognized for 10b–5 defendants, *DeHass* v. *Empire Petroleum Co.,* 286 F. Supp. 809, 815–816 (Colo. 1968), aff'd in part, vacated in part on other grounds, 435 F. 2d 1223 (CA10 1970), neither the Securities and Exchange Commission nor the federal courts have suggested that the contribution right detracts from the effectiveness of the 10b–5 implied action or interferes with the effective operation of the securities laws. See Brief for the Securities and Exchange Commission as *Amicus Curiae* 25–26. Absent any showing that the implied § 10(b) liability structure or the 1934 Act as a whole will be frustrated by finding a right to contribution paralleling the right to contribution in analogous express liability provisions, our task is complete and our resolution clear: Those charged with liability in a 10b–5 action have a right to contribution against other parties who have joint responsibility for the violation.

## IV

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE THOMAS, with whom JUSTICE BLACKMUN and JUSTICE O'CONNOR join, dissenting.

In recognizing a private right to contribution under § 10(b) of the Securities Exchange Act of 1934[1] and Securities and Exchange Commission (SEC) Rule 10b–5,[2] the Court unfortunately nourishes "a judicial oak which has grown from little more than a legislative acorn." *Blue Chip Stamps* v. *Manor Drug Stores,* 421 U. S. 723, 737 (1975). I respectfully dissent from the Court's decision to cultivate this new branch of Rule 10b–5 law.

---

[1] 15 U. S. C. § 78j(b).
[2] 17 CFR § 240.10b–5 (1992).

## I

I agree with the Court's description of its mission as an "attempt to infer how the 1934 Congress would have addressed the issue had the 10b–5 action been included as an express provision in the 1934 Act." *Ante*, at 294. However, I do disagree with the Court's chosen method for pursuing this difficult quest. The words of § 10(b) and Rule 10b–5 scarcely "suggest that either Congress in 1934 or the Securities and Exchange Commission in 1942 foreordained" the existence of a private 10b–5 action. *Blue Chip Stamps*, 421 U. S., at 737. Despite our conceded inability "to divine from the language of § 10(b) the express 'intent of Congress,'" *ibid.*, we acquiesced in the lower courts' consensus that an implied right of action existed under § 10(b) and Rule 10b–5. *Superintendent of Ins. of N. Y.* v. *Bankers Life & Casualty Co.*, 404 U. S. 6, 13, n. 9 (1971); *Affiliated Ute Citizens of Utah* v. *United States*, 406 U. S. 128, 150–154 (1972). See *Kardon* v. *National Gypsum Co.*, 69 F. Supp. 512 (ED Pa. 1946). Such acquiescence was "entirely consistent" with *J. I. Case Co.* v. *Borak*, 377 U. S. 426 (1964), which may have suggested a relatively permissive approach to the recognition of implied rights of action.[3] *Blue Chip Stamps, supra,* at 730. Although we later "decline[d] to read *[Borak]* so broadly that virtually every provision of the securities Acts gives rise to an implied private cause of action," *Touche Ross & Co.* v. *Redington*, 442 U. S. 560, 577 (1979), we never repudiated the 10b–5 action.

We again have no cause to reconsider whether the 10b–5 action should have been recognized at all. In summarizing its rationale, the Court states: "Having made no attempt to define the precise contours of the private cause of action under § 10(b), Congress had no occasion to address how to

---

[3] In *Borak*, we recognized a private party's right "to bring suit for violation of § 14(a) of the [1934] Act" even though "Congress made no specific reference to a private right of action in § 14(a)." 377 U. S., at 430–431.

limit, compute, or allocate liability arising from it." *Ante,* at 295. Though this statement is an adequate description of how we came to infer the private right of action, it is not an adequate defense of the Court's reasoning. Unlike the majority, I do not assume that courts should accord different treatment to implied rights of action whose recognition may have been influenced by *Borak.* How a particular private cause of action may have emerged should not weaken our vigilance in the subsequent interpretation and application of that action. Our inquiries into statutory text, congressional intent, and legislative purpose remain intact. We have consistently declined to recognize an implied private cause of action "under the antifraud provisions of the Securities Exchange Act . . . where it is 'unnecessary to ensure the fulfillment of Congress' purposes' in adopting the Act." *Santa Fe Industries, Inc.* v. *Green,* 430 U. S. 462, 477 (1977) (quoting *Piper* v. *Chris-Craft Industries, Inc.,* 430 U. S. 1, 41 (1977)). Accordingly, the 10b–5 action must be "judicially delimited one way or another unless and until Congress addresses the question." *Blue Chip Stamps, supra,* at 749. In the absence of any compelling reason to allow contribution in private 10b–5 suits, we should seek to keep "the breadth" of the 10b–5 action from "grow[ing] beyond the scope congressionally intended." *Virginia Bankshares, Inc.* v. *Sandberg,* 501 U. S. 1083, 1102 (1991).

The Court's abandonment of this restrained approach to implied remedies stems from its mistaken assumption that a right to contribution is a mere "elemen[t] or aspec[t]" of Rule 10b–5's private liability apparatus. *Ante,* at 295. Unlike a statute of limitations, a reliance requirement, or a defense to liability, however, contribution requires a wholly separate cause of action. This case does not require us to define the elements of a 10b–5 claim or to clarify some other essential aspect of this liability scheme. Rather, we are asked to determine whether a 10b–5 defendant enjoys a distinct right to recover from a joint tortfeasor.

The recent decision in which we established a limitations period for 10b–5 actions, *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson,* 501 U. S. 350 (1991), illustrates the difference that I find decisive. A limitations period is almost indispensable to a scheme of civil liability; even when federal law prescribes no express statute of limitations, we will not ordinarily assume that Congress intended no time limit. *DelCostello* v. *Teamsters,* 462 U. S. 151, 158 (1983). Rather, we " 'borrow' the most suitable statute or other rule of timeliness from some other source." *Ibid.* Contribution, by contrast, was generally unavailable at common law. See *Union Stock Yards Co. of Omaha* v. *Chicago, B. & Q. R. Co.,* 196 U. S. 217, 224 (1905). Those jurisdictions that have seen fit to provide contribution have usually done so by resort to legislation. *Northwest Airlines, Inc.* v. *Transport Workers,* 451 U. S. 77, 87–88, and n. 17 (1981); *Texas Industries, Inc.* v. *Radcliff Materials, Inc.,* 451 U. S. 630, 634 (1981). A court that recognizes an implied right to contribution must endorse a remedy contrary to the common law and perhaps even the legislative policy of the relevant jurisdiction.

*Lampf, Pleva* and like cases thus offer scant guidance when the question is not whether a right to contribution is an appropriate incident of the 10b–5 action, but whether congressional intent or federal common law justifies an expansion of the class entitled to enforce § 10(b) and Rule 10b–5 through private lawsuits. In conducting this inquiry, we cannot safely rely on Congress' design of distinct statutory provisions. Indeed, inappropriate extension of 10b–5 liability would "nullify the effectiveness of the carefully drawn . . . express actions" that Congress has provided through other sections of the 1934 Act. *Ernst & Ernst* v. *Hochfelder,* 425 U. S. 185, 210 (1976). However proper it may be to examine related portions of the Act when fleshing out details of the core 10b–5 action, see *Lampf, Pleva,* 501 U. S., at 359; *id.,* at 365–366 (SCALIA, J., concurring in part and concurring in judgment), the Court errs in placing disposi-

tive weight on the existence of contribution rights under §§ 9 and 18 of the Act. See *ante*, at 296–298.

The proper analysis flows from our well-established approach to implied causes of action in general and to implied rights of contribution in particular. When deciding whether a statute confers a private right of action, we ask whether Congress—either expressly or by implication—intended to create such a remedy. *Touche Ross*, 442 U. S., at 575; *Transamerica Mortgage Advisors, Inc.* v. *Lewis*, 444 U. S. 11, 15–16, 24 (1979). Where Congress did not expressly create a contribution remedy, we may infer that Congress nevertheless intended by clear implication to confer a right to contribution. *Texas Industries, supra*, at 638; *Northwest Airlines, supra*, at 90. Through the exercise of their power to craft federal common law, federal courts may also fashion a right to contribution. *Texas Industries, supra*, at 638; *Northwest Airlines, supra*, at 90.

Application of this familiar analytical framework compels me to conclude that there is no right to contribution under § 10(b) and Rule 10b–5. With respect to fashioning a common-law right to contribution, the Court readily and correctly concludes that the right to contribution recognized in *Cooper Stevedoring Co.* v. *Fritz Kopke, Inc.*, 417 U. S. 106 (1974), has no bearing on the availability of contribution under the elaborate federal statutory scheme governing purchases and sales of securities. *Ante*, at 290. See also *Texas Industries, supra*, at 640–646; *Northwest Airlines, supra*, at 95–98. This case therefore depends exclusively on the interpretation of § 10(b) and Rule 10b–5.

## II

" 'The starting point in every case involving construction of a statute is the language itself.' " *Ernst & Ernst, supra*, at 197 (quoting *Blue Chip Stamps*, 421 U. S., at 756 (Powell, J., concurring)). Nothing in the words of § 10(b) and Rule

10b–5 suggests that joint tortfeasors should enjoy a right to contribution.   Section 10(b) makes it

"unlawful for any person . . .

. . . . . .

". . . To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest for the protection of investors."   15 U. S. C. § 78j(b).

Rule 10b–5 recasts this proscription in similar terms:

"It shall be unlawful for any person . . .
"(a) To employ any device, scheme, or artifice to defraud,
"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
"in connection with the purchase or sale of any security."   17 CFR § 240.10b–5 (1992).

The sweeping words of § 10(b) and Rule 10b–5 ban manipulation, deception, or fraud in the purchase or sale of securities.   "[A]ny person" who engages in such activity merits condemnation under the statute and the rule.   Far from being entitled to seek the protection of § 10(b) and Rule 10b–5, joint tortfeasors must confess that these provisions were "expressly directed . . . to regulate their conduct for the benefit" of others.   *Northwest Airlines, supra,* at 92.

Neither enactment suggests that Congress or the SEC intended to "softe[n] the blow on joint wrongdoers" by permitting contribution. *Texas Industries, supra,* at 639. Quite the contrary: As private actors "whose activities Congress [and the SEC] intended to regulate for the protection and benefit of an entirely distinct class," joint tortfeasors "can scarcely lay claim to the status of 'beneficiary'" under § 10(b) and Rule 10b–5. *Piper* v. *Chris-Craft Industries,* 430 U. S., at 37.

The "underlying ... structure of the [1934 Act's] statutory scheme" also negates the existence of a 10b–5 contribution action. *Northwest Airlines,* 451 U. S., at 91. The Court notes the presence of express contribution rights under §§ 9 and 18 of the Act, but it misconstrues the significance of these provisions. See *ante,* at 296–298. The ability to legislate express contribution remedies under the 1934 Act applies with no less force to § 10(b) than to §§ 9 and 18. "When Congress wished to provide a [contribution] remedy ... it had little trouble in doing so expressly." *Blue Chip Stamps, supra,* at 734. Nor has Congress lacked opportunities to modify the 10b–5 action. Within the last five years, Congress has both preserved and altered the 10b–5 action through amendments to the 1934 Act. Compare Insider Trading and Securities Fraud Enforcement Act of 1988, Pub. L. 100–704, § 5, 102 Stat. 4681 (stating that nothing in a new provision prohibiting insider trading "shall be construed to limit or condition ... the availability of any cause of action implied from a provision of this title"), with 15 U. S. C. § 78aa–1 (1988 ed., Supp. III) (altering the retroactive effect of the 10b–5 limitations period that we adopted in *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson,* 501 U. S. 350 (1991)). See generally *ante,* at 293–294. Had Congress intended 10b–5 defendants to sue joint tortfeasors, a single enactment could have given effect to this policy. Congress' failure to act does not justify further judicial elaboration of the 10b–5 action.

Moreover, contribution is inconsistent with our established views of the 10b–5 action. In *Blue Chip Stamps, supra,* we held that only actual purchasers and sellers of securities are entitled to press private 10b–5 suits. We based this conclusion largely on the language of § 10(b) and Rule 10b–5, which by their terms govern only "the purchase or sale of any security." See 421 U. S., at 731–732; *id.,* at 756–757 (Powell, J., concurring). The merits of a contribution action in this case would turn on whether "the attorneys and accountants involved in [a] public offering" bore "joint responsibility for . . . securities violations." *Ante,* at 288–289. Even if a court were to acknowledge respondents' status as the subrogees of securities sellers, the contribution action would be at least one level removed from the underlying exchange of securities. *Blue Chip Stamps'* requirement of actual purchase or sale would virtually evaporate in a contribution dispute embroiling only separate groups of professionals who had merely advised or facilitated a tainted securities transaction. The rule adopted today thus undermines not only the discernible intent of Congress and the SEC, but also our own elaboration of this regulatory scheme. Such are the risks that inhere in the "hazardous enterprise" of recognizing a private right of action despite congressional silence. *Touche Ross,* 442 U. S., at 571.

## III

Once again we have been invited to join a "vigorous debate over the advantages and disadvantages of contribution and various contribution schemes." *Texas Industries,* 451 U. S., at 638. Consistent with our prior practice, I would adhere to the task of resolving the "dispositive threshold question: whether courts have the power to create . . . a cause of action absent legislation." *Ibid.* Whether the answer to that question is "most unfair" to those who litigate private 10b–5 actions, *ante,* at 292, is irrelevant. Courts should not treat legislative and administrative silence as a tacit license to accomplish what Congress and the SEC are unable or unwill-

ing to do. In their current condition, § 10(b) and Rule 10b–5 afford no right to contribution. Congress has been, and remains free to, alter this state of affairs. Accordingly, I respectfully dissent.