**Richard STOMPER, et al.,
Plaintiffs–Appellees,**

v.

**AMALGAMATED TRANSIT UNION,
LOCAL 241, Defendant–
Appellant.**

**No. 93–3468.**

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1994.

Decided June 22, 1994.

---

Sarah Vanderwicken (argued), Thomas H. Geoghegan, Leon M. Despres, Robert C. Drizin, Despres, Schwartz & Geoghegan, Chicago, IL, for plaintiffs-appellees.

Lisa B. Moss (argued), Adrianne E. Hampo, Carmell, Charone, Widmer, Mathews & Moss, Chicago, IL, for defendant-appellant.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Members of Amalgamated Transit Union Local 241 sued under the Labor–Management Reporting and Disclosure Act, seeking to inspect documents in the local's possession. The union soon provided most of the information the members wanted, and they decided to abandon their claim for the rest. They did, however, ask for attorneys' fees under § 201(c) of the LMRDA, 29 U.S.C. § 431(c). The district court dismissed the complaint without awarding any of the relief the members sought, but it directed the union to pay approximately $10,000 in fees. As the court evaluated matters, the members obtained most of what they wanted and therefore are entitled to fees. 1993 U.S.Dist. LEXIS 12655 (N.D.Ill.).

If this were a suit to which 42 U.S.C. § 1988 applied, the district court's approach would be appropriate. For that statute permits an award to the "prevailing party," and in litigation as in battle one may prevail by persuading one's adversary to retire from the field. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987); *Hill v. Richardson,* 7 F.3d 656 (7th Cir.1993); *Baumgartner v. Harrisburg Housing Authority,* 21 F.3d 541 (3d Cir.1994). But § 201(c) lacks prevailing-party language. Instead it provides:

The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reason-

able attorney's fee to be paid by the defendants, and costs of the action.

The district court brushed aside the difference between § 201(c) and § 1988. Relying exclusively on cases decided under § 1988 and 42 U.S.C. § 2000e–5(k), a similar provision in Title VII of the Civil Rights Act of 1964, the court wrote that a "plaintiff will be considered a prevailing party regardless of the actual merits of the lawsuit as long as some significant benefit is obtained as a result of the lawsuit." Although the local union contended that the suit is not meritorious and that it provided the documents to plaintiffs only because that was cheaper than defending the suit, the district court held that so long as the claim is not frivolous, and the plaintiff obtains some relief through voluntary compliance, an award of fees is in order.

Yet § 201(c) does not refer to "prevailing parties." Any tendency to treat all attorneys' fees statutes as if they were insignificant variations on § 1988 was squelched by *Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), which holds that even a statute with the same *text* as § 1988 does not necessarily have the same *meaning.* The Court treated § 1988 and § 2000e–5(k) as laws with a unique background and history of interpretation, which cannot be generalized to other statutes authorizing the award of fees. —— U.S. at ——–——, 114 S.Ct. at 1027–28. Different statutes receive individual analysis, with principal focus on their language—including the interpretation similar language in other statutes had received before Congress enacted the version at hand. *Id.* at ——–——, 114 S.Ct. at 1030–33.

Congress enacted § 201 in 1959, and the statute has not been amended since. The Civil Rights Act of 1964 lay in the future, and an interpretation of §§ 1988 and 2000e–5(k) to authorize awards of fees to plaintiffs who did not obtain a favorable judgment was not

to come until 1980, when the Court decided *Maher.* The parties have not cited, and we did not find, any decisions before 1959 treating language authorizing an award of fees "in addition to any judgment" as authorizing an award to plaintiffs who did not obtain a favorable decision from the court. The language of § 201(c) derives from the Fair Labor Standards Act, and not until 1987 did any appellate court construe such language as permitting an award to a plaintiff who did not obtain a favorable judgment. *Diaz v. Robert Ruiz, Inc.,* 808 F.2d 427, 429 (5th Cir.1987). Contra, *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 374 n. 11 (8th Cir.1974). *Ace Hardware,* decided before *Maher* held that a settlement can lead to fees under § 1988, treated the statutory issue as straightforward; *Diaz* thought the question equally clear, not troubling to cite the language of the statute or acknowledge the contrary decision in *Ace Hardware.* Perhaps the defendants conceded that *Maher* applies to all statutes authorizing attorneys' fees. Still, to this day, no federal court (other than the district court in this case) has construed § 201(c) as authorizing such an award.[†]

■ Approaching the language of § 201(c) as an original matter, we conclude that the plaintiff must prevail by judgment in order to receive an award of attorneys' fees. "[I]n addition to any judgment awarded to the plaintiff" implies a *favorable* judgment. Every case ends with a judgment of some kind; in this case the terminating order reads: "Judgment is entered dismissing this case with prejudice in light of the parties' settlement [w]ith costs awarded to plaintiffs and against the defendants in the amount of $9,467.75 in attorneys fees." So far as the merits go, plaintiffs not only did not prevail but also suffered dismissal of their complaint with prejudice. That is not a judgment "awarded to" the plaintiffs; it is a judgment suffered by the plaintiffs. If this were the

---

† Only one statute other than the FLSA and the LMRDA uses the language "in addition to any judgment ...". The Family Leave Act, 29 U.S.C. § 2617, also uses that formulation. Another statute, 49 U.S.C. § 11710(b), uses the formula: "The Court shall award a reasonable attorney's fee to the plaintiff in a judgment against the defendant." Its predecessor, 49 U.S.C.App.

§ 15(11) (repealed), provided: "In any judgment which may be rendered the plaintiff shall be allowed to recover against the defendant a reasonable attorney's fee." So far, no court has decided whether the Family Leave Act or either provision in the Interstate Commerce Act permits an award to a plaintiff who "prevailed" but did not obtain a favorable judgment.

sort of "judgment" to which fees may be added, even a judgment in defendants' favor after full deliberation would produce an award of fees to plaintiffs—for a judgment reading "Plaintiffs shall take nothing by their complaint" is still a judgment. Cf. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (a "success" requirement is read into attorneys' fees statutes that are silent on the subject). And if we understand the judgment here as equivalent to "plaintiffs prevailed out of court and so recover nothing in court", then *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981), makes it doubtful that we could call such an order a "judgment awarded to the plaintiff" for purposes of fees and costs. A rule of civil procedure permits either party to make an offer of judgment and provides that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68. A defendant offered $450; the plaintiff went to trial and recovered nothing; *Delta Air Lines* held that a complete lack of success did not require the offeree to pay the other side's costs. Only a positive award to the offeree permits cost shifting under Rule 68, the Court concluded, because only a decision favorable in some respect is a judgment "obtained by" the plaintiff. By a similar approach, only concrete relief is a "judgment awarded to the plaintiff" that permits fee shifting under § 201(c).

■ Plaintiffs offer a different way to read "in addition to any judgment". They deemphasize "judgment" and stress "in addition to". Then § 201(c) means that the award of fees comes *on top of* the stakes of the litigation, rather than *out of* the recovery. Other titles of the LMRDA provide for monetary and equitable relief but do not contain any provision respecting attorneys' fees. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), holds that courts may award fees under these titles, despite the lack of express authorization in the LMRDA, when the suit produces a benefit to union members other than the plaintiffs. Many cases of this kind yield a fund, which may be tapped to pay attorneys' fees. See also *Alyeska Pipeline*

*Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (discussing the history of attorneys' fees in common-fund and common-benefit cases). According to plaintiffs, § 201(c) simply ensures that unions rather than individual workers bear the economic cost of these awards. Unions' funds come from workers collectively, so ordering the unions to pay attorneys' fees spreads the costs among all members. On this understanding a "judgment" is unnecessary; fees may be paid out of kitties created by settlement as well as those created by judicial decision. E.g., *Maceira v. Pagan*, 698 F.2d 38 (1st Cir.1983); *Brennan v. United Steelworkers*, 554 F.2d 586 (3d Cir.1977). The difficulty with this position is that it makes not only the word "judgment" but also the whole of § 201(c) irrelevant. The rule of *Hall* would occupy the field: if the litigation creates a fund, the fee comes out of that fund; if the plaintiff obtains equitable relief, then the defendant pays all legal expenses. Because litigation under Title II of the LMRDA, to which § 201(c) applies, does not yield common funds, only the second half of the rule would apply; and as it already provides that the defendants pay, § 201(c) would have no application to any case. We hesitate to read an entire section out of the United States Code. Once Congress has legislated, the common-law rules courts apply to fill interstices fall away. Courts conform implied remedies to the rules Congress devised for the remedies it authorized expressly, rather than conforming the express provisions to the implied remedies. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, — U.S. —, — – —, 114 S.Ct. 1439, 1448–52, 128 L.Ed.2d 119 (1994); *Musick, Peeler & Garrett v. Employers Insurance of Wausau*, — U.S. —, — – —, 113 S.Ct. 2085, 2090–91, 124 L.Ed.2d 194 (1993); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360–62, 111 S.Ct. 2773, 2781, 115 L.Ed.2d 321 (1991). *Alyeska* shows that *Hall* cannot be expanded to occupy the field in the way plaintiffs propose, and cases such as *Bank of Denver* suggest that the limits imposed by § 201(c) should be used under other titles of the LMRDA.

Plaintiffs' claim depends on Title II of the LMRDA, and awards of attorneys' fees under that title must be founded on § 201(c). See also *Key Tronic Corp. v. United States,* —— U.S. ——, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) (emphasizing that only express statutory language authorizes awards of attorneys' fees).

Plaintiffs stress that the LMRDA is a remedial measure and seek a liberal construction. This maxim is useless in deciding concrete cases. *Every* statute is remedial in the sense that it alters the law or favors one group over another. The LMRDA extended new rights to union members and strengthened their hand against union hierarchies. Section 201(c) is a pro-member law, for it authorizes awards only to plaintiffs. But after we determine that a law favors some group, the question becomes: How *much* does it favor them? Knowing that a law is remedial does not tell a court how far to go. Every statute has a stopping point, beyond which, Congress concluded, the costs of doing more are excessive—or beyond which the interest groups opposed to the law were able to block further progress. A court must determine not only the direction in which a law points but also how far to go in that direction. *Rodriguez v. United States,* 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987); *NAACP v. American Family Mutual Insurance Co.,* 978 F.2d 287, 298 (7th Cir.1992); *In re Erickson,* 815 F.2d 1090, 1094 (7th Cir.1987). We need to know which way the wind blows—*and* how fast it is blowing. Sections 1988 and 2000e–5(k) are more favorable to plaintiffs than is § 201(c), because they omit the "judgment" requirement § 201(c) contains. We would dishonor the laws Congress actually enacted were we, in the name of an interpretive maxim, to treat such different texts as if they meant the same thing.

Searching for a "judgment" has a formal quality, to be sure. Plaintiffs could have insisted on obtaining a consent decree embodying the settlement, and if the union refused the plaintiffs could have proceeded to judgment on the documents that had not been produced. A favorable judgment by consent or by judicial decision could have served as the foundation for an award of fees. But Congress may choose when to observe forms and when to dispense with them. Standing on form has the advantage of letting everyone know what is at stake. Knowledge that a consent decree will create liability for attorneys' fees permits both sides to negotiate with full information about the costs of litigation versus settlement. Whether the informal "prevailing party" approach under § 1988 is superior to the formal "judgment" approach under § 201(c) is not for us to say. It is enough to hold that these are different statutes, with different meaning.

REVERSED

CUDAHY, Circuit Judge, dissenting.

It seems to me that the majority opinion is a triumph of technicality over thoughtfulness. Both the defendant and the majority make much of the statutory language awarding fees "in addition to a judgment awarded to the plaintiff." This seems to me to communicate the idea that the plaintiff's lawyers do not share in the plaintiff's winnings but receive something in addition to them. *Compare* § 201(c) *with* § 501(a) (only other provision of LMRDA expressly allowing attorneys' fees requires fees be deducted from judgment). When, with benefit to all, the litigation is settled with an award to the plaintiff but with a technical "judgment" dismissing the action, it does violence to common understanding to say somehow that the defendant has "won" a judgment rather than the plaintiff.

The absence of the phrase "prevailing party" from the language of the LMRDA, the FLSA and the Family and Medical Leave Act (and the majority views these statutes as equivalent in the fees area) is without significance. The legislative history of the FMLA (which unlike the LMRDA or FLSA was enacted against the backdrop of the very comprehensive § 1988 regime) is replete with references to "prevailing plaintiffs." *See* H.R.Rep. No. 103–8, 103d Cong., 1st Sess., pt. 1 (1993) ("court has no discretion to deny fees to a prevailing plaintiff"); Sen.Rep. No. 103–3, 103d Cong., 1st Sess. (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 47 ("Prevailing plaintiffs are entitled to a reasonable attorneys' fee."). And the lengthy floor debate of the

Grassley Amendment to the FMLA, requiring non-binding arbitration before suit, makes clear that everyone recognized that the FMLA broadly adopted the British rule awarding attorneys' fees to the prevailing party. *See* 139 Cong.Rec. S 1105 (daily ed. Feb. 3, 1994) (statement of Sen. Dodd). To me the express reference to "prevailing party" analysis—derived straight from § 1988 and its extensive case law—in the legislative history of the FMLA suggests that Congress intended both it and the LMRDA to follow the § 1988 model.

Moreover, *Fogerty,* as the majority indicates, counsels that attorneys' fees provisions should turn in part on the purpose of the underlying statute. —— U.S. at —— – ——, 114 S.Ct. at 1027–28. In *Fogerty,* the Supreme Court found that the history and policies behind the Copyright Act, 17 U.S.C. § 505, were sufficiently different from those of the Civil Rights Act of 1964 that the similar fee-shifting provisions required different interpretations. *Id.* "Often times in the civil rights context, impecunious 'private attorney general' plaintiffs can ill afford to litigate their claims against defendants with more resources. Congress sought to redress this balance in part, to provide incentives for the bringing of meritorious lawsuits...." *Id.* The LMRDA likewise was enacted to strengthen the hand of union members to achieve the Act's "primary objective of ensuring that unions will be democratically governed and responsive to the will of their memberships." *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982); *cf. Landry v. Sabine Independent Seamen's Ass'n,* 623 F.2d 347, 350 (5th Cir.1980) ("The LMRDA, like the Civil Rights Act of 1964, is a remedial statute"). The majority is of course correct that simply calling the LMRDA a remedial act does not mandate this interpretation of § 201(c). But the linkage of the FMLA and LMRDA in both purpose and structure—as reflected in the legislative history—suggests application along the lines of the § 1988 cases. The language of § 201(c) does not compel the majority's result, and the policies of the LMRDA and the history of the more recent statute with the same fee provision (the FMLA) cut strongly against it. I therefore respectfully dissent.