Mark C. BRANIGAN, Petitioner,

v.

ALEX. BROWN & SONS,
INC., Respondent.

No. 97 Civ. 7262(LAK).

United States District Court,
S.D. New York.

Nov. 13, 1997.

Stephen L. Ratner, Rosenman & Colin, New York City, for Petitioner.

Daniel J. Donovan, BT Alex. Brown, Baltimore, MD, for Respondent.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case calls upon the Court to determine whether an arbitration award was rendered in manifest disregard of law and therefore should be vacated.

### Facts

In April 1995, William B. Kimberly commenced an arbitration before the National Association of Securities Dealers seeking damages that allegedly resulted from losses in his securities account at Alex. Brown & Sons, Inc. ("ABS"). The claim named both ABS and Mark C. Branigan, the ABS stock broker who handled Kimberly's account. Whether in the statement of claim, at the hearing or both, Kimberly contended that Branigan ignored his direction to adopt a

conservative investment posture and that he inappropriately recommended as a "sure thing" an investment in Citadel Holding Corporation; he asserted also that ABS ignored his entreaties for help. In consequence, Kimberly claimed that the respondents were liable on the theories, among others, that they had churned his account, violated state and federal securities laws, and violated suitability requirements. In due course, Kimberly dropped the claim against Branigan and proceeded against ABS. ABS in turn filed a third party claim against Branigan.

At the hearing, ABS took the position that neither ABS nor Branigan had done anything wrong, that ABS had properly supervised Branigan's activities, and that Branigan had acted properly with respect to Kimberly's account. After requesting and accepting briefs on the question whether ABS could recover over against Branigan under agency law, the panel issued an award which found ABS liable to Kimberly for $167,014 plus interest and found that Branigan was liable to ABS on the third party claim in the amount of $83,507 plus interest. Branigan moves to vacate or modify the award on the ground that it was rendered in manifest disregard of the law. ABS cross-moves to confirm it.

### Discussion

■■■ The parties agree on the legal standard that governs this matter. The "standard of review for scrutinizing an arbitration award is extremely narrow." [1] In order to overturn an award on the basis of manifest disregard of law, one must show "more than error or misunderstanding with respect to the law." [2] Instead,

> "[t]he error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover. the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." [3]

Branigan's position is simply stated. ABS's witnesses at the arbitration hearing testified that Branigan had acted properly, that ABS had supervised Branigan as required, and that Branigan had done nothing wrong. Following the hearing, both sides briefed the issue whether ABS could recover from Branigan on the third-party claim as a matter of the law of agency. Branigan contends that the law on this point is indisputably in his favor, given the ABS hearing testimony. and that the arbitrators therefore must have acted in manifest disregard of law in making an award against him.

The fact that ABS defended Branigan's actions at the arbitration hearing lends some appeal to Branigan's contention that the arbitrators must have disregarded the law in making an award on the third-party claim. If one does not think too deeply about it, it indeed seems unreasonable to say that ABS should have a recovery over against Branigan given its protestations at the hearing that Branigan had done nothing wrong and so on. But the appeal of Branigan's position is strictly superficial.

To begin with, Branigan ignores the fact that the arbitration panel found that ABS was liable to Kimberly for $167,014 with respect to an account for which Branigan was responsible. The panel quite clearly rejected ABS's contention that no one had done anything wrong. Thus, the simplistic argument that Branigan advances—how can I be liable to ABS if ABS said I did nothing wrong?—is frivolous.

Moving to a slightly more sophisticated plane, Branigan argues that ABS's testimony that it supervised Branigan's activities properly precludes liability. The theory is that ABS necessarily authorized any misconduct by Branigan. Branigan points to comment d to Section 401 of the agency restatement, which provides in relevant part that "[i]f the principal authorizes a tort, either advertently or inadvertently, he cannot recover for harm

---

1. *Sofia Shipping Co. v. Amoco Transp. Co.*, 628 F.Supp. 116, 118 (S.D.N.Y.1986).

2. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986).

3. *Id.* at 933.

resulting to him from it." [4] There are at least three fundamental problems with Branigan's argument.

First, there can be an enormous difference between a registered broker-dealer properly discharging its statutory responsibility to supervise its registered representatives, on the one hand, and authorizing a tort, on the other. Section 15(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [5] permits the Securities and Exchange Commission to sanction those persons associated with a broker-dealer who "fail[ ] reasonably to supervise, with a view to preventing [securities] violations ... another person who commits such a violation, if such person is subject to his supervision." No such charge will lie, however, where the person "reasonably discharged the duties and obligations incumbent upon him by reason of the [firm's] procedures" and reasonably believed those procedures were being followed.[6] The statute thus creates three central foci for evaluating supervisory liability: the firm's compliance procedures, the reasonableness of the putative supervisor's actions, and the meaning of "subject to his supervision," i.e., who is a supervisor. The adequacy of a firm's compliance procedures depends upon whether they are reasonably designed to prevent and detect violations and whether the firm insists on following them in practice.[7]

Viewed in this light, ABS's testimony that it properly supervised Branigan's activities, even assuming that the arbitration panel credited that testimony, fell considerably short of an admission that it authorized any misconduct in which Branigan may have engaged. It may well have meant to convey only that it had enforced adequate compliance procedures.

Second, Branigan's argument assumes that the only possible basis of ABS's liability was *respondeat superior*— the vicarious liability of a principal for the acts of its agent. But Kimberly claimed violations of the federal securities laws which afford other bases for the imposition of liability on an employing broker-dealer. For example, Section 20 of the Exchange Act [8] provides in substance that a person who controls another is jointly and severally liable for Exchange Act violations by the controlled person unless it establishes that it acted in good faith *and* neither directly nor indirectly induced the act or acts constituting the violation.[9] Thus, even assuming the law of agency to be as Branigan claims, the arbitration panel well may have imposed liability on ABS on a theory that did not require it to find that ABS authorized any misconduct by Branigan. If it did so, the legal principle upon which Branigan relies simply would be inapplicable and the panel quite clearly would not manifestly have disregarded controlling law.

Finally, Branigan's argument neglects the fact that defendants found liable under Section 10(b) of the Exchange Act and Rule 10b–5 thereunder have the right to seek contribution as a matter of federal law.[10] Given the Exchange Act claim asserted by Kimberly, the arbitrators were entitled to render an award in favor of ABS on the third-party complaint on this basis as well.

In the last analysis, we do not know exactly why the arbitrators did what they did. They did not—and were not required to—explain their award. As there were theories available to the arbitrators on which they properly could have made the award, even assuming that Branigan is right about the law of agency as to which the Court expresses no view, it is not for this Court to second

---

**4.** Restatement (Second) Of Agency § 401, *cmt. d* (1958). He relies also on Section 439(c).

**5.** 15 U.S.C. § 15(b).

**6.** *Id.*

**7.** *See, e.g., Prudential Securities, Inc.,* Exch. Act Rel. No. 33082, 55 SEC Docket 624 (Oct. 21, 1993); *Paine Webber, Inc.,* Exch. Act Rel. No. 31889, SEC Docket 889 (Feb. 18, 1993); *First*

*Albany Corp.,* Exch. Act Rel. No. 30515, 51 SEC Docket 87 (Mar. 25, 1992).

**8.** 15 U.S.C. § 78t.

**9.** Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o, is to the same effect.

**10.** *See Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993).

**550**

guess their decision.[11] As the petitioner has failed to establish that the arbitrators acted in manifest disregard of controlling law, its petition fails.

### *Conclusion*

The petition to vacate the arbitration award is denied and the cross-motion to confirm the award is granted.

SO ORDERED.

**11.** *Willemijn Houdstermaatschappij BV v. Standard Microsystems Corp.* 103 F.3d 9, 13 (2d Cir. 1997) ("If there is 'even a barely colorable justification for the outcome reached,' the court must confirm the arbitration award.").