James W. SIKES and Felix Kemp, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY and USA Network, Defendants,

AMERICAN TELEPHONE & TELEGRAPH COMPANY, · Cross–Claimant,

v.

TELELINE, INC., Cross–Defendant.

No. CV692–147.

United States District Court, S.D. Georgia, Statesboro Division.

Nov. 17, 1993.

John Chapman Bell, Jr., Pamela Sue James, William Allen Pannell, Bell & Pannell, John B. Long, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, Melvyn I. Weiss, Michael Champlin Spencer, Richard Henry Weiss, Ralph M. Stone, Milberg Weiss Bershad Hynes & Lerach, New York City, for James W. Sikes, and Felix Kemp.

Dorothy Y. Kirkley, C. Geoffrey Weirich, Paul, Hastings, Janofsky & Walker, Atlanta, GA, Robert Carter Daniel, Jr., Harry Duff Revell, Burnside, Wall, Daniel & Ellison, Augusta, GA, Bernard David Walter, Law Offices of Bernard David Walter, San Francisco, CA, for Teleline, Inc.

Ted Hamby Clarkson, Wyckliffe Austin Knox, Jr., Joseph Hixon Huff, Knox & Zacks, Augusta, GA, William N. Withrow, Jr., Susan S. Lanigan, Troutman & Sanders, Atlanta, GA, for American Tel. & Tel. Co.

Dorothy Y. Kirkley, C. Geoffrey Weirich, Paul, Hastings, Janofsky & Walker, David R. Aufdenspring, Richard Craig Mitchell, Michael S. French, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, Robert Carter Daniel, Jr., Burnside, Wall, Daniel & Ellison, Augusta, GA, for USA Networks.

## ORDER

BOWEN, District Judge.

The named Plaintiffs in the above-captioned case have brought various claims on

behalf of themselves and an alleged class of similarly situated individuals seeking damages from their participation in the telephone 900–number "Let's Make A Deal" game.

Two motions are now before the Court: 1) Defendant American Telephone and Telegraph's ("AT & T's") Motion for Reconsideration of this Court's prior order dismissing Defendant Teleline, Inc., and 2) Cross–Defendant Teleline, Inc.'s ("Teleline's") Motion to Dismiss AT & T's cross-claim against it for contribution and/or indemnity. For the reasons stated below, AT & T's motion is **DENIED**, and Teleline's motion is **DENIED IN PART** and **GRANTED IN PART**.

## I. BACKGROUND

The motions at issue raise interesting and complex issues regarding the early stages of class action litigation and the availability of contribution and indemnity under various state and federal laws. The facts of the case are, briefly, as follows.

Plaintiff James Sikes is the parent of a ten-year-old child who repeatedly called the 900–number "Let's Make A Deal" (LMAD) game, incurring charges in excess of $500.00 through approximately forty-eight phone calls on his parents' phone bill. Plaintiff Felix Kemp's grandson also placed a number of calls (for which the Kemps paid) to the LMAD game. Perhaps as many as 10,000 individuals such as Mr. Sikes' son and Mr. Kemp's grandson were induced to call the LMAD game.

Cross–Defendant Teleline marketed LMAD through television commercials featuring such celebrities as Santa Claus and game show host Monty Hall, both announcing their intention to "give away $2,000.00 in cash instantly" without disclosing the very slim chances of winning the announced cash prize. The game was structured to prolong each phone call. Callers were charged $3.88 per minute, and the average call totalled $25.00.

The "Let's Make A Deal" game was created and operated by Defendant Teleline, Inc. of Beverly Hills, California. Defendant AT & T, pursuant to a Billing Services Agreement, provided the 900–numbers and billing

services for the operation of the game. Defendant USA Network advertised the game over its nationwide cable television network. LMAD allegedly billed callers in excess of $25,000,000.00 and collected in excess of $20,-000,000.00 until this Court enjoined its operation in late 1992.

The Plaintiffs, seeking class certification on behalf of all persons similarly situated, claim that all three Defendants operated the game as an enterprise and that the game involved, among other things, multiple acts of mail and wire fraud constituting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961, et seq.), the Communications Act of 1934 (47 U.S.C. § 151, et seq.), the Georgia Racketeer Influenced Corrupt Organizations Act ("Georgia RICO") (O.C.G.A. § 16–14–1, et seq.), and various other Georgia laws.

In its Answers to Plaintiffs' Complaint and Amended Complaint, AT & T asserted cross-claims against Defendant Teleline seeking contribution and/or indemnity from Teleline in the event AT & T is found liable to the Plaintiffs. Teleline has moved this Court to dismiss that cross-claim, arguing that contribution and indemnity are disallowed, as a matter of law, under RICO and the other related laws at issue here.

Meanwhile, the named Plaintiffs and Defendant Teleline reached a settlement agreement according to which Plaintiffs would dismiss their claims against Teleline (now claiming insolvency) without prejudice in return for Teleline's agreement to drop its pending appeal, to assist the Plaintiffs in their continuing action against AT & T and the USA Network, and to a statute of limitations allowing actions against Teleline in this matter by putative class members until at least the end of 1994. This Court approved the Stipulation of Dismissal on April 21, 1993. The Court's Order of April 22, 1993, then granted the Plaintiffs' Motion for Voluntary Dismissal of Defendant Teleline Without Prejudice. AT & T now asks the Court to reconsider this Dismissal.

## II. MOTION FOR RECONSIDERATION

### A. Standard for Reconsideration

Rule 60(b), Fed.R.Civ.P., provides for relief from a final judgment, order, or proceed-

ing on grounds of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct by an adverse party; (4) void judgment; (5) judgment satisfied, or prior judgment on which it was based has been reversed or vacated; or (6) "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). "Where either clauses (b)(1), (2), (3), (4), or (5) [of Rule 60] provide coverage for the movant's claim, relief may not be obtained pursuant to Clause (b)(6)." *Gulf Coast Bldg. & Supply Co. v. International Brotherhood of Electrical Workers,* 460 F.2d 105, 108 (5th Cir.1972).[1]

■ Motions for relief under Rule 60(b) are addressed to the sound discretion of the district court. *Hand v. United States,* 441 F.2d 529, 531 (5th Cir.1971). The Court does not grant relief under Fed.R.Civ.P. 60(b) as a matter of routine; the Court's interest in finality is strong, and " 'a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.' " *Lussier v. Dugger,* 904 F.2d 661, 667 (11th Cir. 1990) (quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469 (5th Cir.1967)).

**B. AT & T's Motion for Reconsideration**

With the above standards in mind, I will now proceed to examine AT & T's motion. AT & T's Motion for Reconsideration of this Court's order dismissing Teleline is based on two theories. First, AT & T claims that the Court did not conduct the inquiry required by Rule 23(e), Fed.R.Civ.P., into the adequacy and reasonableness of the proposed class settlement prior to approving that settlement.

Second, AT & T claims that the Court has not complied with the mandatory requirement of Rule 23(e), Fed.R.Civ.P., of providing *notice* to the group classified either as absent class members (assuming the earlier provisional class certification is still effective) or as putative potential class members not yet parties to the litigation (assuming the proposed class is not yet certified and the class issue remains unresolved). The ap-

proval and notice arguments will be considered in turn.

**1. Approval of Teleline's Dismissal**

As a preliminary matter, though not here dispositive of AT & T's *motion,* it is worth noting that AT & T's standing to move the Court to reconsider Teleline's dismissal is questionable. The named Plaintiffs and Teleline have reached a settlement, and have submitted that settlement to this Court for approval.

■ AT & T, as a non-settling defendant, is not directly prejudiced by the proposed settlement and is not the intended subject or beneficiary of required judicial approval of settlements under Rule 23(e), Fed.R.Civ.P. *See Wainwright v. Kraftco Corp.,* 53 F.R.D. 78, 81 (N.D.Ga.1971) ("In a Rule 23(e) motion the parties with which the court is primarily concerned are the class of plaintiffs and the settling defendant. The non-settling defendants really have no standing to object to a proposed settlement."); *In re Beef Industry Antitrust Litigation,* 607 F.2d 167, 172 (5th Cir.1979) ("As a non-settling defendant, [defendant] is not prejudiced by the settlement and therefore has no standing to complain....").

■ A non-settling defendant, such as AT & T, might be allowed to object to a proposed settlement, however, where that agreement precludes the non-settling defendant from later seeking indemnification from those defendants which have settled. *See In re Beef Industry, supra,* at 172.

Although Teleline has agreed to help Plaintiffs in their continuing action against the remaining Defendants, the actual agreement between Teleline and Plaintiffs does not in any way limit AT & T's ability to pursue a contribution or indemnity claim against Teleline. It might also be noted that the Court today—in denying much of Teleline's Motion to Dismiss AT & T's cross-claims for contribution and indemnity—also allows AT & T to seek relief from Teleline.

---

1. In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Regardless of AT & T's standing to object to Teleline's dismissal, AT & T has submitted briefs on the approval and notice issues and its arguments have been considered in connection with its Motion for Reconsideration. It has, then, been heard on these issues, and its concerns with Teleline's dismissal have been considered.

■ Regarding the two requisite procedures for approving proposed class action [2] settlements, the Federal Rules of Civil Procedure state that

[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Rule 23(e), Fed.R.Civ.P.. This Rule provides the basis for both of AT & T's objections to Teleline's dismissal.

■ Rule 23(e) is meant to afford protection to absent class members from the possible risk of named class representatives using the class action device for their own personal gain. The risk, particularly in the early stages of a class action prior to actual class certification, is that the named representatives will become fainthearted before the action is adjudicated or will employ the class device as a type of "strike suit," using the specter of potential class-wide liability to create leverage against defendants for a high individual settlement.[3] Settlements and compromises in class actions thus require the courts to fill a supervisory or fiduciary role to insure that absent class members are not "sold out" by the named class representatives in settlement negotiations.

■ In its supervision of the settlement at issue here, this Court has clearly met the first element of Rule 23(e)—that of mandatory court approval of any compromise or dismissal involving a class action.[4] Prior to approving the Stipulation of Dismissal, this Court reviewed the terms of the agreement and the relative benefits to each party to determine whether the settlement was fair, reasonable, and an adequate determination of the parties' rights and obligations. *See, e.g., Magana v. Platzer Shipyard, Inc.,* 74 F.R.D. 61 (S.D.Tex.1977) (holding that Rule 23(e) requires such determinations prior to settlement approval); *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977) ("[I]n determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.").

■ In my review of the Stipulation of Dismissal, I found no evidence of collusion or unfairness, and I considered the agreement to reflect a fair, reasonable, and adequate determination of the parties' rights and obligations in resolution of their dispute. The agreement appeared to be the result of an arms-length bargaining process and of a considered decision by the Plaintiffs on behalf of the proposed class to cease their efforts at collecting a judgment from Teleline.

The named Plaintiffs were surely not dismissing Teleline for their own personal gain at the expense of the proposed class, as they in fact received no payment whatsoever from Teleline as part of the settlement. Instead, the agreement provides that in return for Teleline's dismissal, the company will assist the Plaintiffs in their litigation against AT &

---

**2.** Contrary to AT & T's assertion, it can be proper to dismiss defendant Teleline prior to formally and permanently deciding the class certification issue. The requirements of Rule 23(e) can be applied to a stipulation of dismissal in the precertification stage—and indeed should be so applied—to avoid collusion in the early stages of class litigation. *McArthur v. Southern Airways, Inc.,* 556 F.2d 298 (5th Cir.1977) (class allegations in complaint presumed to be true, thus requiring application of Rule 23(e) procedures), *withdrawn on other grounds,* 569 F.2d 276 (5th Cir.1978); 7B C. Wright and A. Miller, *Federal Practice and Procedure* § 1797, at 347 (1986).

I have thus treated the Plaintiffs' action as a class action for the purposes of Rule 23(e). Merely because I have found notice to putative class members to be unnecessary here, *infra.,* does not mean that I have failed to apply Rule 23(e) to Plaintiffs' motion.

**3.** *See* 7B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1797 (1986).

**4.** I approved the Stipulation of Dismissal on April 21, 1993.

T and the USA Network by providing access to Teleline's records and former employees. Teleline also agreed to drop its pending appeal to the circuit court of a prior order of this Court and to extend the statute of limitations against it until at least the end of 1994. Moreover, the dismissal was *without prejudice* and came prior to formal permanent class certification, so the dismissal would have no res judicata effect on the putative class members. In short, AT & T has offered no substantial evidence indicating that any party or potential party (other than AT & T) would object to or would be prejudiced by the settlement and dismissal of Teleline.[5]

## 2. Notice to Absent Class Members

The second element of Rule 23(e) is that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." I did not direct that *any* notice be given to the proposed class members, which was proper under the circumstances of this case.

■ Although the language of Rule 23(e) appears to mandate notice to all absent class members of compromises or dismissals, many courts have taken a "functional approach" and do not require that notice be sent in particular circumstances. *E.g., Magana*, 74 F.R.D. at 67; *Berse v. Berman*, 60 F.R.D. 414 (S.D.N.Y.1973); 7B Wright & Miller § 1797, *supra*. Such an approach— generally requiring notice, but making such determinations depending on the facts of each case—seems preferable to a strict mandatory notice approach, particularly where the

> difficulties and expense of pre-certification notice can be avoided in those instances where notice *would not realistically further the dual aims of Rule 23(e)* [the protection of the interests of the putative class

members and the prevention of Rule 23 abuse].

*Magana, supra*, at 68 (emphasis added). In the apparent absence of any binding authority requiring notice of compromise or dismissal in every case to absent pre-certification class members,[6] this Court will utilize the functional approach in this case and not require notice in the pre-certification stage where notice would be unnecessarily burdensome and unlikely to further the aims of Rule 23(e).

■ In the present case, notification of the putative proposed class members prior to Teleline's dismissal would have been unnecessarily burdensome and unlikely to further the aims of Rule 23(e). As discussed above, the proposed settlement does not appear to be the result of any collusion between the settling parties. The named representatives received no financial compensation from Teleline, and the agreement appears to have resulted from genuine, arms-length negotiation between the parties.

Also as discussed above, the interests of the putative proposed class members are not prejudiced by the dismissal and lack of notice. The dismissal itself was without prejudice, and since it occurred in the pre-certification stage, the dismissal is not res judicata on the absent class members. Those individuals not named in the *Sikes* action are thus free to bring their claims against Teleline as they see fit, either individually or as additional parties under the Federal Rules of Civil Procedure. Teleline's sworn insolvency indicates, however, that those later claims would likely have the same slim chances of bearing fruit as the original claims against Teleline.

Finally, there is no indication that any significant formal or informal publicity surrounds the current action.[7] The lack of publicity is noteworthy in that any absent unno-

---

5. Since this action has been pending for some time and discovery is well underway, AT & T has had significant time in which to obtain and present such information in its objections to the dismissal.

6. The only authority in the Eleventh Circuit apparently requiring Rule 23(e) notice in all circumstances is the former Fifth Circuit decision *McArthur v. Southern Airways, Inc.*, 556 F.2d 298

(1977). That decision, however, was vacated on other grounds, 569 F.2d 276 (1978), with direction that the original *McArthur* opinion be withdrawn and that legal propositions therein were not to be considered binding.

7. The parties' briefs and this Court's own Nexis computer-assisted search have not revealed any significant publicity surrounding the case.

tified proposed class members are not likely to have developed a "reliance interest" in the proposed class action, abstaining from filing their individual claims pending the outcome of the proposed class action. If no reliance interest were likely to have developed, then it would seem unnecessary to inform the absent proposed class members that they may no longer rely on the class action to vindicate their rights.

Therefore, upon review of AT & T's Motion for Reconsideration, the requested relief is **DENIED**.

## III. TELELINE'S MOTION TO DISMISS AT & T'S CROSS–CLAIM

Teleline has moved this Court under Rule 12(c), Fed.R.Civ.P., to dismiss AT & T's cross-claim for contribution and/or indemnity. Teleline argues that contribution and indemnity are not allowed, as a matter of law, in federal RICO actions, and that contribution and indemnity should similarly not be allowed in the other related causes of action of this case.

### A. Standard for Motion to Dismiss

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings according to Rule 12(c), Fed.R.Civ.P. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present material made pertinent to such a motion by Rule 56. Rule 12(c), Fed.R.Civ.P.

■ If only the pleadings are considered, then Rule 12(c) itself authorizes summary dismissal.[8] If affidavits, depositions, and other materials outside the pleadings are considered, then the Rule's conversion provision applies, and the motion is treated as a motion for summary judgment under Rule 56. *See* Rule 12(c), Fed.R.Civ.P.

■ Rule 12(c) is also a vehicle by which litigants may, after the pleadings are closed, assert a 12(b)(6) motion for their opponent's failure to state a claim upon which relief can be granted.[9] Such an assertion is allowed after the close of the pleadings by Rule 12(h)(2). If a party uses Rule 12(c) to assert a 12(b)(6) defense, as Teleline appears to do in the present case, the Court will apply the same standards to the motion as if it were brought directly under Rule 12(b)(6). *See Miami Herald Pub. Co., Div. of Knightridder Newspapers, Inc. v. Ferre*, 636 F.Supp. 970 (S.D.Fla.1985); *Morgan v. Church's Fried Chicken*, 829 F.2d 10 (6th Cir.1987), and cases cited therein; 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (1990).

■ A motion under Rule 12(b)(6) attacks the legal sufficiency of the complaint. "In essence, the movant says, 'Even if everything you allege is true, the law affords you no relief.'" *Johnson v. Fleet Finance Inc.*, 785 F.Supp. 1003 (S.D.Ga.1992) (Edenfield, C.J.). I note initially that in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all of the non-moving party's factual allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990). While the discovery process may show certain factual allegations to be untrue, the Court is not at liberty to make such pronouncements at this stage in the proceedings.

---

8. Exhibits to the pleadings also may be considered in a Rule 12(c) motion. *Jacksonville Newspaper Printing Pressmen & Assistants' Union v. Florida Publishing Co.*, 340 F.Supp. 993, 995 (M.D.Fla.1972), *aff'd*, 468 F.2d 824 (5th Cir. 1972), *cert. den.*, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973).

9. Rule 12(c) is also useful to object to an opponent's failure to join an indispensable party under Rule 19 and to the Court's subject matter jurisdiction under Rule 12(h)(3). *See* Rules 12(h)(2) and 12(h)(3), Fed.R.Civ.P.; 5A C. Wright and A. Miller, *Federal Practice and Procedure* § 1367, at 515 (1990). Neither of these objections apply to the present case, however.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts consistent with the allegations that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). If it appears that a plaintiff might possibly prove a set of facts supporting a well-pleaded and cognizable legal claim, then the motion will be denied. I will now apply these stringent standards in ruling on Teleline's motion to dismiss.

## B. Teleline's Motion To Dismiss AT & T's Cross-claims

As mentioned above, Teleline's motion to dismiss is in the nature of a Rule 12(b)(6) motion, namely that AT & T's cross-claim for contribution and indemnity fails to state a claim upon which relief can be granted. Teleline argues that contribution and indemnity are not allowed as a matter of law in federal RICO actions, and that those claims should similarly not be allowed under the federal Communications Act, the Georgia RICO statute, and other state law claims at issue here.

### 1. Federal RICO Claims

RICO provides a civil cause of action to challenge alleged unlawful racketeering activity of RICO defendants. *See* 18 U.S.C. § 1962, et seq. The statute does not expressly provide RICO defendants a right of contribution or indemnity. Since indemnity and contribution have important differences, I will consider them separately in the present context.

#### a. Indemnity Under Federal RICO

First, AT & T's indemnity claim. Indemnity rights may generally arise in several ways: Congress may create the right by statute (either expressly or impliedly), *see Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) and *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981); the federal courts may create the right through feder-

al common law, *id.;* or the parties themselves may create the right by private contractual agreement. *Boone v. Beacon Bldg. Corp.,* 613 F.Supp. 1151 (D.C.N.J.1985); *Overseas Nat'l Airways, Inc. v. United States,* 766 F.2d 97 (2d Cir.1985).

Congress has not created an express statutory right to indemnity under RICO. Congress likewise does not appear to have created any implied statutory indemnity rights for RICO defendants. Several courts have found that such implied rights do not exist. *See Seminole Electric Cooperative, Inc. v. Tanner,* 635 F.Supp. 582 (M.D.Fla.1986); *New Jersey Office Supply, Inc. v. Feldman,* 1990 WL 74477, 1990 U.S.Dist. Lexis 6620 (D.C.N.J.1990). As in *Texas Industries, supra,* this case also does not implicate uniquely federal interests or otherwise appear to provide an appropriate setting for the creation of new federal common law implied rights to indemnity.

The present case, however, does not require the Court to find an implied statutory or common law right to indemnity; the parties themselves—in their contractual agreement—created AT & T's right to look to Teleline for contribution or indemnity should legal problems arise. AT & T's indemnity rights will not turn on the creation of a new federal common law right to indemnity under RICO; those rights were created by the parties and will turn on the enforceability of the parties' private agreement.

Neither the parties nor this Court's research has revealed a single case for guidance in dealing with *contractual* contribution or indemnity rights under RICO. I am thus faced with the question: to what extent should Teleline be held to the terms of its agreement to indemnify AT & T?

The parties were both sophisticated entities which evaluated the possible risks and rewards of doing business with each other on the agreed-upon terms. AT & T's pleadings reflect that as part of that agreement, Teleline and its legal counsel warranted that the LMAD game was legal in all respects, and Teleline agreed to indemnify AT & T if AT & T were found liable as a result of that game.

Still, there are compelling public policy arguments against enforcing these private indemnity rights. If AT & T were found liable under RICO, then allowing the company to shift the entire burden to another party, escaping any punishment, would be contrary to the purposes of the statute. That is precisely why other courts have refused to find any *implied* indemnity rights under RICO. *E.g., Seminole Electric Cooperative, Inc. v. Tanner, New Jersey Office Supply v. Feldman, supra.*

The only precedent for limiting AT & T's contractual indemnity rights under RICO is by analogy to cases interpreting federal antitrust and securities statutes. *See Globus v. Law Research Service, Inc.,* 418 F.2d 1276 (2d Cir.1969), *cert. den.,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970) (contractual indemnity provision is against public policy where the party seeking indemnity has actual knowledge of joint tortfeasor's fraudulent misstatements, and thus "has itself committed a sin graver than ordinary negligence."); *Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 553 (D.Colo.1989) ("in order to ensure that no party shirks its responsibility under federal securities laws and to preserve the deterrent effect of those laws, courts refuse to enforce claims for indemnification created by contract"); *Kennedy v. Josephthal & Co.,* [1982–83 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 99,204, at 95,820 (D.Mass.1983) ("there is no right to indemnification for liability incurred pursuant to Rule 10b–5, even under a contractual indemnity agreement because ... public policy precludes a party liable for an intentional violation from completely shifting his liability onto others, even if those others are equally or even more at fault."). In such cases, indemnity has been disallowed, even under contractual agreements, where a highly culpable wrongdoer has sought to shift the entire liability to another party.[10]

■■■ Given the policies behind RICO of punishing those operating a racketeering enterprise for unlawful purposes, it makes sense to limit a party's ability to shift its entire RICO liability to another culpable party. If an entity is itself found to have engaged in a pattern of unlawful activity, and is found to have possessed the requisite scienter to sustain RICO liability, this Court will *not* enforce an agreement by which that entity is allowed to escape liability entirely. In other words, this Court will not recognize or enforce either implied or contractual rights to complete indemnification in RICO actions.

### b. Contribution Under RICO

■■■ Contribution rights, where only part of the burden of defending wrongful conduct is shifted to a co-wrongdoer, can also arise by federal statute, federal common law, or by agreement between the parties. As with indemnity, courts have declined to recognize an *implied* right of contribution under RICO. *E.g., Seminole Electric Cooperative, Inc. v. Tanner, supra.*

In the present case, however, viewing the allegations in the light most favorable to the non-moving party, the parties' indemnity agreement might be construed to provide AT & T private *contractual* contribution rights against Teleline. Absent any precedent precisely on point, I must decide whether such privately created contribution rights should be recognized and enforced by law.

■■■ I find that contribution rights, by which liability is apportioned among joint tortfeasors, *will* be recognized under RICO when those rights are expressly created by the parties in a contractual agreement preceding the litigation. I see no harm in allowing two parties that have agreed in advance to share the penalties of the unlawful conduct in which they are both found to have engaged. Under this view, neither party is allowed to escape without punishment and both parties are subject to the deterrent effects of RICO.[11] Although I do not decide as much here, Teleline—the most active cre-

---

10. Put another way, these courts have strengthened the maxim that one cannot indemnify himself against his own willful or reckless conduct. *See, e.g., Globus Law Research Services, Inc., supra.*

11. Cases involving federal securities laws, *e.g., Globus, Inc. v. Law Research Service, Inc.,* 318 F.Supp. 955 (S.D.N.Y.1970), which have not recognized complete indemnity rights, have nevertheless recognized contribution rights.

ator and operator of the LMAD game—may be at least as worthy of the label "racketeer" as would AT & T (if AT & T were indeed eventually found liable under RICO) and at least as worthy of sharing the damages for the game which it created and from which it profited.

For the above-stated reasons, Teleline's Motion to Dismiss AT & T's cross-claim is **GRANTED** insofar as it relates to a claim for indemnity under federal RICO, but the Motion is **DENIED** insofar as it relates to a claim for contractual contribution rights under the statute.

### 2. Georgia RICO

Like the federal RICO statute, the Georgia RICO statute has no express provisions for contribution or indemnity rights. The Court has not located any reported Georgia opinions dealing with the issues presented here. Georgia RICO, however, is modeled after the federal RICO statute. *See Chancey v. State,* 256 Ga. 415, 349 S.E.2d 717 (1986), *cert. den.,* 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987). Georgia courts in other contexts have noted that since Georgia RICO is relatively new and has had little time to spawn interpretive opinions, Georgia courts should look to federal RICO decisions for guidance. *Johnson v. Fleet Finance, Inc.,* 785 F.Supp. 1003, 1010 (S.D.Ga. 1992).

For the reasons stated above in connection with contribution and indemnity under federal RICO, Teleline's Motion to Dismiss AT & T's cross-claim under Georgia RICO for indemnity is **GRANTED** and Teleline's motion regarding AT & T's contribution rights is **DENIED.**

### 3. Communications Act

Whether AT & T is entitled to complete indemnity under the Communications Act is a difficult question. Neither the Act itself nor available case law provide much guidance in this area. Again, as with RICO, the Communications Act does not have an express or implied statutory provision for indemnity, and there does not appear to be an established federal common law tradition on this point.

The Communications Act is a more appropriate statute on which to uphold the parties' contractual indemnity agreement than is the RICO Act. Unlike RICO, liability under the Communications Act only requires "unjust" or "unreasonable" conduct. *See* 47 U.S.C. §§ 201, 202. The Communications Act also does not contain RICO's treble damages provisions. Allowing what amounts to a negligent Communications Act wrongdoer to shift its entire burden to an indemnitor is not as contrary to penal and deterrent purposes as would be such a shift under the "willful" and "fraudulent" standards of RICO. In short, liability under the Communications Act claim is not dependent upon the same scienter finding as is RICO liability. Upholding contractual indemnity rights under the Communications Act is different from allowing a party to seek indemnification for its own willful or reckless conduct.

Additionally, some of AT & T's alleged "unreasonableness" may very well have stemmed from a reliance on Teleline and its legal counsel. The contract—and Teleline's warranty that the game was legal in all respects—may have led AT & T to forego its own research and investigation into the propriety of the game. I will therefore allow AT & T to pursue its express contractual indemnity rights under the Communications Act.

AT & T's contractual contribution claim under the Communications Act, as discussed *supra* relating to federal and state RICO liability, would impose liability upon both potentially unreasonable parties, and will be recognized as stating a legal claim upon which relief might be granted.

Teleline's Motion to Dismiss is thus **DENIED** with respect to AT & T's indemnity and contribution claims under the Communications Act.

### 4. State Law Claims

In addition to the federal and Georgia RICO remedies discussed above, the Plaintiffs have pursued several state law causes of action against AT & T. These claims are founded on separate and independent theories of recovery. If AT & T is

found liable under these additional non-RICO state law theories, I see no reason to deprive Defendant AT & T of the opportunity to avail itself of any appropriate state law defenses or cross-claims. A plaintiff's decision to join RICO claims, which later may prove meritless, with state law claims should not deprive a defendant of the state law defenses or actions to which it would have been entitled absent those federal claims.

■ To the extent that AT & T is entitled to contribution and indemnity under the state laws at issue, it should be allowed to pursue those claims. Accordingly, Teleline's Motion to Dismiss AT & T's cross-claims for contribution and indemnity under the Plaintiffs' state law claims is **DENIED.**

## IV. CONCLUSION

For the above-stated reasons, AT & T's Motion for Reconsideration of this Court's Order dismissing Defendant Teleline is **DENIED.** Teleline's Motion to Dismiss AT & T's cross-claims against it for contribution and indemnity is **GRANTED IN PART and DENIED IN PART.**

The following motions are also **DENIED AS MOOT:** Cross-defendant Teleline's Motion to Postpone Determination of Class Certification Pending Discovery, Cross-defendant Teleline's Motion for Stay of the District Court Proceedings Pending Appeal, and Plaintiff Sikes' Motion to Require Bond to Be Posted by Defendant Teleline.

In that the issues between Teleline and AT & T are distinct and may provide ample confusion of other, unrelated questions before the trier of fact if the case is eventually tried to a jury, the parties are invited to submit their views on the prospect of a severance of the cross-claims from the main case. Such submissions should be made before the close of business on December 17, 1993.