Gary Marcus KAY, Plaintiff,

v.

FIRST CONTINENTAL TRADING,
INC., et al., Defendants.

No. 95 C 3089.

United States District Court,
N.D. Illinois,
Eastern Division.

June 17, 1997.

Alan J. Mandel and George S. Robot of Alan J. Mandel & Assocs., Ltd., Chicago, IL, for Plaintiff Gary Marcus Kay.

Gerald L. Maatman, Jr. and Ashley Hall of Baker & McKenzie, Chicago, IL, for Defendant First Continental Trading, Inc.

Patricia R. Morton and Vicky Papoutsis, Chicago, IL, for Defendant James F. Van Ella & Assocs., Inc.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Gary Kay ("Kay") has filed a six-count Complaint against his short-term former employer First Continental Trading, Inc. ("First Continental") and credit reporting agency James E. Van Ella & Associates, Inc. ("Van Ella"), seeking damages stemming from Van Ella's false report that attributed a state court felony charge of "Receiving/Posses-

sion/Selling Stolen Vehicle" against Gary *Stephen* Kay to plaintiff Gary *Marcus* Kay instead.[1] Kay has asserted Counts I and II against Van Ella under the Fair Credit Reporting Act ("Act"[2]), coupling those claims with a common law defamation claim (Count V). Kay also charges First Continental in Counts III and IV with two violations of the Act (those dealing with the obligations of the *user* rather than obligations of the *producer* of a false credit report) and in Count VI with the wrongful termination of Kay's employment.[3]

After Van Ella then turned around and filed a cross-claim for contribution and indemnity against First Continental, the latter filed a Fed.R.Civ.P. ("Rule") 56 motion for summary judgment against Van Ella. Both sides have complied with this District Court's General Rule 12(M) and (N) and have briefed the Rule 56 motion, which is thus ready for disposition. For the reasons stated in this memorandum opinion and order, the motion is granted in its entirety.

### Contribution Claim as to Act Violations

Although Van Ella's Cross–Claim Count I ¶ 6 cited only to the Illinois Joint Tortfeasor Contribution Act ("Illinois Act," 740 ILCS 100/0.01 to 100/5) as the source of First Continental's claimed liability for contribution, Van Ella has shifted ground in its current responsive memorandum to add a claim of implied contribution under the Act. That switch is well-advised, for as stated in *Donovan v. Robbins,* 752 F.2d 1170, 1179 (7th Cir.1985) in the course of rejecting the applicability of the Illinois Act to a contribution claim as to another federally-based statutory liability:

> Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law.

But that effort to shift gears does not help Van Ella, for none of the three potential federal grounds for contribution—express or implied congressional enactment, federal common law or private contractual agreement (see *Sikes v. AT & T Co.,* 841 F.Supp. 1572, 1581–82 (S.D.Ga.1993) and cases cited there)—is applicable to this case. Those three possible theories will be discussed in turn.

■ As for the Act itself, the short answer is that it contains no express provision for contribution, in addition to which its structure really negates any inference to that effect. As *Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 470, 482 (D.D.C.1994) has pointed out in the course of rejecting an attempted imposition of consumer reporting agency obligations under the Act on the users of those agencies' consumer reports:

> For example, the Act imposes different obligations upon consumer reporting agencies that provide consumer credit informa-

1. According to Complaint ¶ 13, Van Ella's error was really inexcusable:

   1. As reflected in the text, the different middle initials should likely have alerted Van Ella to the potential error—or at least put it on further inquiry.
   2. Even leaving that aside, what should have clinched the matter is that the criminal file record showed the birthdate of the defendant as October 29, 1953, while Kay's totally different birthdate of January 20, 1945 had been given to Van Ella by First Continental in its "Request for Background Investigation" order.
   3. Another possible warning sign beyond those two items (the second of which should have been conclusive) might have been the Hickory Hills address listed for Gary Stephen Kay in the criminal file, while First Continental's order accurately stated Gary M. Kay's address in downtown Chicago (of course that

alone would not have put Van Ella on notice of a problem, given the lapse of seven years between the felony charge and the date of the background investigation). Yet Van Ella's Background Investigation report to First Continental falsely listed plaintiff Gary M. Kay's name and birthdate as the one reflected in the criminal records in a manner that lent official credibility to the total misstatement:

   The county of Cook, in the state of IL, advised that Kay, Gary, M., same date of birth, 01/20/45, has the following charge recorded on file....

2. Citations to that statute will take the form "Act § —," referring to its section numbering within 15 U.S.C. rather than to the Act's internal numbering.

3. This Court has just dismissed Count VI in a separate memorandum opinion and order.

tion and users of consumer reports. *Compare* 15 U.S.C.A. §§ 1681c–1681e (1982) *with id.* § 1681m. Users have a limited responsibility. Under the Act, the primary duty assigned to users of consumer information is mandatory disclosure to a consumer of the name and address of the consumer reporting agency that provided a report when the consumer is adversely affected by the dissemination of information provided for employment purposes. *See supra* § V. On the other hand, consumer reporting agencies were charged with several responsibilities. The Act requires consumer reporting agencies to maintain and follow a myriad of reasonable compliance and accuracy policies and to follow strict procedures in cases of disputed accuracy. If litigants were allowed to use section 1985(3) to compel users of consumer reports to comply with the duties imposed upon consumer reporting agencies via a federal conspiracy statute (and vice versa), then these litigants would be able to circumvent the intent of Congress and the purpose of the Act.

*Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and its progeny reflect the increasing general reluctance of the Supreme Court to recognize implied rights of action where Congress has not itself created them. And in the more particularized area of the judicial recognition or nonrecognition of actions for contribution, *Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 290–92, 113 S.Ct. 2085, 2087–88, 124 L.Ed.2d 194 (1993) and the cases cited there plainly signal that no such claim should be implied in this instance.[4]

That same aversion to any such implied right of action also serves to negate any extension of the limited concept of federal common law that would permit Van Ella to shunt the responsibility that Congress has expressly imposed on it onto the less culpable user of its flawed report. Again *Musick,*

*Peeler & Garrett* and the cases that it cites strongly counsel the rejection of any judicially-created remedy of that nature.

Finally as to this segment of the case, Van Ella correctly does not claim any contractual arrangement between the litigants that would entitle it to contribution. That being the case, Van Ella's contribution claim for any Act-based liability that may be imposed on it is devoid of merit on any possible theory.

### Indemnity Claim as to Act Violations

Van Ella's claim of contractual indemnity (not contribution) poses an added level of complexity. In response to First Continental's order for a credit report, which had no such provision, Van Ella transmitted its seriously misleading Background Investigation report on a printed form that began with this fine-print legend:

> This information is furnished in response to an inquiry for the purpose of evaluating the potential employment capabilities of the subject. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The enquirer has agreed to indemnify the investigating agency for any damage arising from misuse of this information and the report is furnished in reliance upon that indemnity. It must be held in strict confidence.

If First Continental and Van Ella had enjoyed no prior relationship, that unbargained-for obligation could not have been inflicted on First Continental (at least *Northwestern Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 377–78 (7th Cir.1990) and *Betaco, Inc. v. Cessna Aircraft Co.,* 32 F.3d 1126, 1133–34 (7th Cir.1994) suggest that). But in this instance there had been a three-year course of conduct involving the regular placement by First Continental, and the regular filling by Van Ella, of like orders for background

---

4. Van Ella cites to *Ricci v. Key Bancshares of Maine, Inc.,* 768 F.2d 456 (1st Cir.1985) as purported support for the implied existence of contribution rights under the Act. Not so. *Ricci* focused only on a right of qualified immunity against any *potential* claim of that nature—but because the parties there did not address the viability or nonviability of any such claim, the Court of Appeals had no occasion to do so either. And Van Ella has not referred (let alone discussed) the later decision in *Musick, Peeler & Garrett,* whose analysis so clearly calls for the rejection of any such implied claim here.

information on First Continental's new employees. So unless the quoted contractual indemnification provision were to be viewed as unenforceable because contrary to public policy (see *Sikes*, 841 F.Supp. at 1582 and cases cited there), Van Ella would be entitled to invoke that fine-print provision to its aid.

■ That public policy issue need not be addressed, however, for a reason that Van Ella has glossed over—or, more accurately, ignored entirely: the inapplicability of the indemnity provision to the current situation as a matter of contract law. It will be remembered that under the terms of that provision the credit reporting agency is entitled to shift liability to its customer "for any damages arising from *mis*use of this information" (emphasis added). But in this instance First Continental did not *mis*use the information—instead it used the information in exactly the way, and for the exact purpose, for which Van Ella knew the order for the report had been placed: to assist First Continental in evaluating Kay's employability.[5]

Essentially Van Ella is asking that its customer insulate it entirely from any responsibility for its own misrepresentation of Kay's "criminal record." Although First Continental may indeed be accountable to *Kay* for its own conduct in relying on Van Ella's proper discharge of its professional responsibilities (an issue that it is unnecessary to address for the present), that does not entitle *Van Ella* to lay off its own liability onto First Continental.[6]

In summary, Van Ella's claim for indemnity as to Kay's Act-based claims also fails.

Accordingly that part of Van Ella's Cross-claim is also dismissed.

### Kay's Defamation Claim

■ Because Kay's Count V defamation claim against Van Ella is grounded in state and not federal law, the Illinois Act *is* a potential source of recovery on that facet of Van Ella's Cross-claim against First Continental. But that potential cannot be realized here, because Van Ella's own Rule 56 submissions (not its pleading) compel the rejection of that aspect of the Cross-claim.

As indicated earlier, the defamation that fuels Kay's claim against Van Ella is the latter's false implication to Kay of an alleged crime—a criminal charge that was actually brought against a different person. And in both Van Ella's Count I seeking contribution and its Count II seeking indemnity from First Continental, here is what it says that First Continental did (part of Paragraph 6 of each Cross-claim count):

(c) negligently and/or intentionally published or caused to be published information obtained in the background investigation of the Plaintiff [Kay].

But Rule 56(e) says that the allegations in a party's pleadings (unless they are admitted, of course) are not to be taken into account for summary judgment purposes. Instead the party resisting summary judgment must do so with admissible evidence. And when it comes to fleshing out the Cross-claim allegation in *factual* terms, all that Van Ella can and does point to as to First Continental's

latter's own wrongdoing—an impermissible consequence that this Court rejects.

---

5. To the extent that Van Ella pegs its assertion of "misuse" on First Continental's own claimed statutory violations of the Act (the Cross-claim refers to Act § 1681m(a) and (c)), those asserted violations are already the exact predicates for Kay's Act-based claims against First Continental (see Complaint Count III ¶ 11 and Count IV ¶ 11). If then the litigation were to result in a determination that the Act had been breached by both Van Ella and First Continental (each of those factors being a necessary precondition to any potential indemnity claim by Van Ella), the effect of upholding Van Ella's indemnity claim would be to exculpate it entirely from any liability based on its own misconduct, at the expense of its customer that relied on the accuracy of its reporting, and possibly to do so to an extent that could go beyond the amount of Kay's direct recovery against First Continental based on the

6. This reading and application of the First Continental–Van Ella indemnity contract makes it unnecessary to consider whether the decision in *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 973–74 (4th Cir.1987), which upheld an indemnity claim under the Act where the indemnitor-indemnitee relationship (with the indemnitor being the "active" or "primary" wrongdoer and the indemnitee being the "passive" or "secondary" wrongdoer) was totally different from that involved here, could be stretched to support an otherwise viable potential claim by credit agency Van Ella against user First Continental.

purported "publication" of the defamatory material[7] is this statement that Kay ascribes to First Continental's Anthony Bittman in a telephone conversation with Kay's wife (Kay Dep. 28):

> Q. What did you hear Mr. Bittman say to your wife on the telephone?
>
> A. That I was fired, and the reason that I was fired was because of the background check and that I was involved in stolen cars. The Social Security was mentioned, but then laughed at.

Although that conversation may technically qualify as a "publication" for purposes of defamation law, there is not a whisper (nor is it at all reasonable to infer) that Bittman's providing that information to Kay's wife could conceivably have damaged his reputation (with Kay's wife?!) or could have provided any other predicate for First Continental's liability on defamation grounds.[8] And what is also unquestionably true is that the ascribed statement cannot even arguably constitute any basis for Van Ella's shifting the liability for *its* seriously mistaken report—which was the sole source of the defamatory information—onto First Continental.

### Conclusion

Van Ella has come up short on every aspect of its Cross-claim against First Continental. There are no genuine issues of material fact, and First Continental is entitled to a judgment as a matter of law on those claims. Van Ella's Cross-claim is dismissed in its entirety.

---

**7.** First Continental's purely internal use of the false information purveyed to it by Van Ella does not of course amount to "publication."

---

**8.** Notably Kay, who has evidenced no reluctance to assert whatever claims he may reasonably advance in this lawsuit, has not himself charged First Continental with defamation based on that conversation.