**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>RUPERTO GUILLEN-CERVANTES,<br>*Defendant-Appellant*. | No. 12-10255<br><br>D.C. No.<br>4:10-cr-00753-<br>CKJ-JJM-5 |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>BETTY CASTILLO,<br>*Defendant-Appellant*. | No. 12-10279<br><br>D.C. No.<br>4:10-cr-00753-<br>CKJ-JJM-6<br><br>OPINION |

Appeals from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted January 13, 2014, as to 12-10255;
Submitted January 13, 2014, as to 12-10279*

---

 * The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Filed March 28, 2014

Before: Susan P. Graber and Jacqueline H. Nguyen, Circuit Judges, and Raymond J. Dearie, Senior District Judge.[**]

Opinion by Judge Nguyen

## SUMMARY[***]

### Criminal Law

The panel affirmed a criminal forfeiture judgment entered pursuant to 18 U.S.C. § 982(a)(6)(A) in a case in which Betty Castillo, who was convicted of conspiracy to transport and harbor illegal aliens, contended that the forfeiture judgment violates her due process rights under the Fifth Amendment because she is unable to seek contribution from other members of the conspiracy.

The panel declined to find an implied right to contribution under 18 U.S.C. § 982 or to fashion a new right to contribution as a matter of federal common law. The panel therefore rejected Castillo's due process claim because she can point to no constitutionally protected liberty or property interest of which she has been deprived.

[**] The Honorable Raymond J. Dearie, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Joshua F. Hamilton (argued) and Clay Hernandez, Law Offices of Hernandez & Robles, P.C., Tucson, Arizona, for Defendant-Appellant Guillen-Cervantes.

Adrian G. Hall, Law Office of Adrian G. Hall, Tucson, Arizona, for Defendant-Appellant Castillo.

Bruce M. Ferg (argued), Assistant United States Attorney; Robert L. Miskell, Appellate Chief; John S. Leonardo, United States Attorney, District of Arizona, Tucson, Arizona, for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

In connection with activities performed as part of an alien smuggling organization operating out of Tucson, Arizona, Ruperto Guillen-Cervantes and Betty Castillo were convicted of conspiring to transport and harbor illegal aliens, in violation of 8 U.S.C. § 1324(a)(1). They each received a term of imprisonment and a forfeiture judgment—thirty-seven months and $229,000 for Guillen-Cervantes, and thirty-seven months and $290,000 for Castillo. Castillo challenges her forfeiture judgment on appeal, contending that it violates her due process rights under the Fifth Amendment because she is unable to seek contribution from other members of the conspiracy.[1] We review de novo a Fifth Amendment due

---

[1] We address the remaining issues raised by Guillen-Cervantes and Castillo in an unpublished memorandum disposition filed this date.

process challenge to the constitutionality of a criminal sentence. *United States v. Garcia-Guizar*, 234 F.3d 483, 489 n.2 (9th Cir. 2000). We affirm Castillo's forfeiture judgment.

## I.

To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution. *See Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). The Constitution itself creates no property interests; rather, such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Paul v. Davis*, 424 U.S. 693, 709 (1976)) (internal quotation mark omitted). A constitutionally cognizable property interest in a benefit requires more than "an abstract need or desire" or a "unilateral expectation of it"—rather, there must be "a legitimate claim of entitlement." *Id*. (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). This typically requires an individual to demonstrate that an existing law, rule, or understanding makes the conferral of a benefit "mandatory." *Id*. at 760 (emphasis omitted); *see also id*. at 756 ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Castillo acknowledges, as she must, that neither 18 U.S.C. § 982(a)(6)(A)—the statutory clause pursuant to which her forfeiture judgment was imposed—nor any other federal law, rule, or understanding confers a mandatory right to contribution in the current circumstance. Nevertheless, she urges us to find an implied right to contribution under

18 U.S.C. § 982, or to fashion a new right to contribution as a matter of federal common law.  Thus, in essence, Castillo asks us to find or forge a right to contribution applicable in the present case, and to hold that the deprivation of that right as a consequence of her forfeiture order violates her Fifth Amendment guarantee of due process.  For the following reasons, we decline to do so.

## A.

A right to contribution may be found through the affirmative creation of such a right by Congress, either expressly or by "clear implication."  *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981).  When implied, congressional intent controls; such intent may be discerned by analyzing a statute's legislative history and other factors such as "the identity of the class for whose benefit the statute was enacted, the overall legislative scheme, and the traditional role of the states in providing relief."  *Id.* at 639.

The legislative history of 18 U.S.C. § 982(a)(6)(A) offers little support for finding an implied right to contribution. Section 982(a)(6)(A) states that when a person is convicted of conspiring to violate certain federal immigration laws, the sentencing court "shall order" that individual to forfeit property (1) derived from or traceable to the proceeds of the conspiracy, or (2) used to facilitate the conspiracy's criminal activities.  Included among the immigration laws listed is Immigration and Nationality Act § 274(a), 8 U.S.C. § 1324(a)—the provision of the Act that Castillo was convicted of violating.  Section 274(a) was added to 18 U.S.C. § 982(a)(6)(A) by the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202, and

was listed as a "technical correction[] to existing criminal forfeiture authority." *Id*. § 18.   As a House Report accompanying an earlier version of the legislation explained, the addition sought to correct an oversight in the drafting of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, div. C, 110 Stat. 3009. *See* H.R. Rep. No. 105-358, at 63.   Although "Congress intended [in the IIRIRA] to authorize criminal forfeiture for violations of 8 U.S.C. [§] 1324(a)," certain "technical errors . . . null[ified] the intended effect." *Id*.  And that "intended effect," according to the original author of § 982(a)(6)(A), was to quell "the pernicious practice of alien smuggling" by expanding the reach of criminal forfeiture laws to include the proceeds of alien smuggling activity. 146 Cong. Rec. E14-01 (extension of remarks of Rep. Carrie P. Meek) ("Current law also does not permit the forfeiture of the proceeds of an alien smuggling offense. . . .   My bill corrects these deficiencies . . . .").   This background belies any argument that Congress intended (impliedly or not) for a right to contribution to exist for those convicted of conspiring to violate federal immigration laws.

The remaining factors identified by the *Texas Industries* Court similarly weigh against finding an implied right to contribution.  Section 982(a)(6)(A) was decidedly not enacted for the benefit of conspirators working to smuggle illegal aliens into this country—rather, as noted above, it was designed for their detriment.   Moreover, the legislative scheme of which § 982(a)(6)(A) was intended to be a part—namely, the IIRIRA—sought to strengthen enforcement of federal immigration laws. *See, e.g*., IIRIRA §§ 101–112 (border control); *id*. §§ 121–125 (facilitation of legal entry); *id*. §§ 131–134 (interior enforcement); *id*. §§ 201–220 (enhanced enforcement and penalties against alien smuggling

and document fraud); *id*. §§ 401–421, 501–510 (restrictions on employment and benefits). Finally, even though this is not an area of law traditionally relegated to the states such that inferring a federal right to contribution would be inappropriate, *see Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012) (noting that federal agencies "play a major role in enforcing the country's immigration laws"), we do not find this fact dispositive.

## B.

Alternatively, we may fashion a right to contribution as a matter of federal common law. *See Tex. Indus*., 451 U.S. at 638. Instances in which it is appropriate for courts to craft new rules of federal common law, however, are "few and restricted." *Id*. at 640 (quoting *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963)) (internal quotation marks omitted). They generally fall into two categories: where a federal rule of decision is "necessary to protect uniquely federal interests," *id*. (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426 (1964)) (internal quotation marks omitted), and where Congress has empowered the federal courts to develop substantive law, *id*.

The first category is inapplicable here, as the expansion of federal common law into immigration law is hardly "necessary to protect uniquely federal interests." "Federal governance of immigration and alien status is extensive and complex." *Arizona*, 132 S. Ct. at 2499. Federal law identifies specific categories of aliens who may not be admitted into this country, *see* 8 U.S.C. § 1182, improper entry and reentry are designated federal offenses, *see* 8 U.S.C. §§ 1325, 1326, and criminal punishments and sanctions exist for those who assist or conspire to assist the

unlawful entry of inadmissible aliens, *see* 8 U.S.C. § 1324(a)(1). In short, this appeal does not present the type of situation "that oblige[s] courts to formulate federal common law." *Tex. Indus.*, 451 U.S. at 642.

Within the second category, courts may establish new rules of federal common law "when Congress has vested jurisdiction in the federal courts and empowered them to create governing rules of law." *Id*. On two occasions, the Supreme Court has found itself so empowered. First, in *Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc.*, 417 U.S. 106 (1974), the Supreme Court found a right to contribution between joint tortfeasors in a maritime action for personal injuries. *Id*. at 113. That action arose, however, in the context of the Court's admiralty jurisdiction, "one of the areas long recognized as subject to federal common law." *Tex. Indus.*, 451 U.S. at 642. Second, in *Musick, Peeler & Garrett v. Employers Insurance of Wausau*, 508 U.S. 286 (1993), the Court held that defendants in an action brought under Rule 10b-5 of the Securities and Exchange Commission had a right to seek contribution as a matter of federal common law. *Id*. at 298. The Court noted that the private right of action under Rule 10b-5 had been a judicial creation. *Id*. at 291. The Court thus went on to conclude that responsibility for shaping the Rule 10b-5 action was a "task . . . Congress has left to us." *Id*. at 294.

Congress has delegated no such authority to the federal courts to craft new rules governing the enforcement of or punishments for violating federal immigration laws. As the Supreme Court has noted, "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). We have similarly

observed that "[t]he scope of judicial inquiry into immigration legislation is exceedingly narrow . . . [because] 'over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens.'" *United States v. Barajas-Guillen*, 632 F.2d 749, 752 (9th Cir. 1980) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)).  Indeed, executive and legislative primacy in this area stems from the federal government's authority under the Constitution to establish uniform rules of naturalization, regulate commerce with foreign nations, and conduct foreign affairs. *See Toll v. Moreno*, 458 U.S. 1, 10 (1982).  Castillo offers no compelling justification for departing from this long-held understanding.

## II.

Castillo possesses no right to contribution under existing federal law, and we decline her invitation to find a new right to contribution—either implied or as a matter of federal common law.  Consequently, her due process claim fails, as she can point to no constitutionally protected liberty or property interest of which she has been deprived. Accordingly, we **AFFIRM** her forfeiture judgment.