**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEPAUL INDUSTRIES, an Oregon
non-profit corporation,
    *Plaintiff-Appellee*,

   v.

BENJAMIN JAMES MILLER, personally
and in his official capacity as
Assistant City Attorney for the City
of Eugene,
    *Defendant-Appellant*,

   and

CITY OF EUGENE, a municipal
corporation; JOHN RUIZ, in his
official capacity as the City Manager
of the City of Eugene; LAVENA
NOHRENBERG, in her official
capacity as Customer Experience
Manager of the City of Eugene
Public Library; CLAYTON STILWELL,
in his official capacity as Purchasing
Analyst for the Finance Department
of the City of Eugene,
    *Defendants*.

No. 20-35598

D.C. No.
6:18-cv-00320-
MC

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted August 9, 2021
Seattle, Washington

Filed September 28, 2021

Before:  Carlos T. Bea, Daniel A. Bress, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke

## SUMMARY[*]

### Civil Rights

The panel reversed the district court's order denying, on summary judgment, qualified immunity to Benjamin Miller, an assistant city attorney for the City of Eugene, Oregon, in an action brought pursuant to 42 U.S.C. § 1983 alleging that Miller violated plaintiff's due process rights when he advised the City not to renew plaintiff's contracts with the City.

Plaintiff, DePaul Industries, is a qualified nonprofit agency for individuals with disabilities (QRF) under an Oregon law that requires cities to contract with QRFs in certain circumstances.  DePaul alleged that it held a clearly

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

established constitutionally protected property interest in two 12-month security-service contracts with the City. But in 2016, the City decided to modify its security services by requiring that the security service employees be armed and decided not to renew the contracts.

The panel held that no court has considered DePaul's novel argument that the Oregon QRF statute created a protected property interest in city contracts. Nor does the QRF statute on its face definitively resolve this question in DePaul's favor. DePaul had not provided any precedent addressing Oregon's QRF statute or anything closely related. While a case need not be "directly on point" to put the statutory or constitutional question beyond debate, all of the cases relied on by DePaul and the district court were too far from "on point." There was no precedent clear enough that every reasonable official would interpret the QRF statute as creating a protected property interest in DePaul's annual contracts with the City. DePaul also pointed to no Oregon cases considering whether the QRF statute allows the City to end a contract if it seeks new services, such as armed security. DePaul's asserted interest was thus not clearly established, and Miller was entitled to qualified immunity.

---

**COUNSEL**

Robert A. Koch (argued), Christopher J. Pallanch, and Stephanie J. Grant, Tonkon Corp LLP, Portland, Oregon, for Defendant-Appellant.

Thomas M. Christ (argued) and Drew L. Eyman, Sussman Shank LLP, Portland, Oregon, for Plaintiff-Appellee.

**OPINION**

VANDYKE, Circuit Judge:

Benjamin Miller, an assistant city attorney for the City of Eugene, Oregon (the City), files this interlocutory appeal from the district court's denial of his motion for summary judgment. He seeks qualified immunity from due process claims brought by DePaul Industries. In this case, we must decide whether DePaul, a qualified nonprofit agency for individuals with disabilities (QRF) under Oregon law, held a clearly established constitutionally protected property interest in two 12-month contracts with the City. If DePaul held no clearly established interest, then Miller could not have violated it when advising the City not to renew DePaul's contracts, and he is entitled to qualified immunity as a matter of law.

No court has considered DePaul's novel argument that the Oregon QRF statute created a protected property interest in city contracts. Nor does the QRF statute on its face definitively resolve this question in DePaul's favor. DePaul's asserted interest was thus not clearly established.[1] Miller is entitled to qualified immunity, and we reverse the district court's denial of summary judgment as to him.

**BACKGROUND**

In the early 2000s, the City began contracting for security services with DePaul Industries. DePaul is classified as a "qualified nonprofit agency for individuals

---

[1] We do not reach the question of whether DePaul had a constitutionally protected property interest in its contracts with the City. Instead, our analysis is limited to whether any such interest was clearly established at the time of the alleged violation.

with disabilities" or "QRF" under an Oregon law that requires cities to contract with QRFs in certain circumstances. Or. Rev. Stat. §§ 279.835(5), 279.850(1)(a). For more than a decade, DePaul staffed the City's public library and eleven of its parking garages with unarmed security guards. Every twelve months, the City reviewed DePaul's contracts for the library and parking garages and renewed the contracts for the coming year. But in 2016, the City decided to modify its security services by requiring that the security service employees be armed and decided not to renew the contracts. At the time, DePaul was the only QRF certified by the Oregon Department of Administrative Services to provide unarmed security services in the county where the City is located.

## I. The City Considers Whether to Renew DePaul's Library Contract.

The City's 2016 contract-review process began with a review of DePaul's library security services. In response to alarming increases in drug and alcohol use, disruptive conduct, and threatening behavior from library patrons, the library convened a safety committee. Committee members expressed concerns about the skill level, training, and professionalism of DePaul security guards, as well as a general desire for guards to be armed in the future. The committee began to consider whether the City should seek better-trained contractors licensed to provide armed security services for the library. Later, the committee learned that the City's performing arts center was planning to seek a bid for armed security services. DePaul acknowledges it was not qualified to provide armed services.

On March 11, 2016, the committee advised the library's leadership team to recommend that the City solicit new bids for armed security services at the library. Later that month,

the City informed DePaul that it would soon solicit security services for the both the library and the performing arts center. This combined solicitation would request "high quality uniformed armed and unarmed Security Officer Services." During the evaluation and solicitation process, DePaul continued to provide security services under the two active City contracts.

## II. The Parties Dispute DePaul's Indemnification Obligations under the Existing Parking Garage Contract.

On February 16, 2016, a DePaul parking garage security guard sued the City for retaliation, claiming that the City, through DePaul, reduced his hours in response to protected political speech. Assistant city attorney Benjamin Miller, who handled this litigation for the City, identified an indemnification provision in the City's parking garage contract with DePaul that required DePaul to defend the City from claims "arising out of or in any way related to performance of the Services or other actions or failure to act by [DePaul] or [DePaul's] employees."

On March 3, 2016, Miller sent a letter to DePaul's President and CEO stating "the City's position that . . . DePaul is legally obligated to defend and indemnify the City . . . with respect to [the security guard's] complaint." DePaul disagreed. On May 31, 2016, shortly after the City published its solicitation for security services at the library, DePaul informed Miller that it would not indemnify the City in the lawsuit because the employee was "seek[ing] to hold the City liable for its own alleged conduct." But Miller believed that DePaul had breached the parking garage security contract by declining to indemnify the City against this suit.

Miller informed the City Attorney of DePaul's actions and later noted that the City "ha[s] a current cont[r]act with [DePaul] that is being renegotiated. I don't know why it is being renewed if this is their position." Asked for his recommendation on how to secure indemnification, Miller shared his opinion that "stopping contract negotiations and getting the principals together may go further for getting DePaul to cooperate."

The same week, DePaul's President and CEO personally received notice of the library's solicitation for security services. DePaul did not contact the City to discuss the solicitation, and it did not submit a bid, but several other security service providers did.

## III. The City Chooses Not to Renew DePaul's Library and Parking Garage Contracts.

On June 10, 2016, DePaul filed for Chapter 11 bankruptcy. On June 21, 2016, a City purchasing analyst and the City's parking operations supervisor discussed adding parking garage security to the eventual consolidated contract for the library and performing arts center. This was possible because the scope of the library solicitation included any other facilities "covered by a resulting Contract." The purchasing analyst concluded that the parking garages could be added to the library and performing arts center contract, and impressed upon the parking operations supervisor the importance of "hav[ing] all the performance-issue related documentation as you move away from the DePaul contract," given the QRF law.

On June 23, 2016, the City announced its intent to award the library and performing arts center contract to Advanced Security, Inc. On June 28, 2016, a city employee informed DePaul that the City was "working to consolidate all of its

security services under one contract" and would "be ending the [parking garage security services] contract" with DePaul. The City and Advanced Security, a non-QRF contractor, amended their contract—which went into effect on August 1, 2016—to cover the additional parking garages.

## IV.     DePaul Sues the City and Miller.

On February 8, 2017, DePaul filed a lawsuit against the City, Miller in his personal and official capacities, and other City officials in their official capacities. In the operative complaint, DePaul alleges that the defendants:

> bypassed the QRF mandate, concocted and ratified an RFP [Request For Proposal] process that essentially disqualified [DePaul] from the Library Contract by the addition of an unnecessary requirement for "armed" security, and then deprived [DePaul] of the Parking Garage Contract as well, in retaliation for [DePaul]'s refusal to succumb to the City's wrongful demand for contractual indemnity for the City's own conduct which deprived [the DePaul employee who filed a lawsuit against the City] of his First Amendment rights.

DePaul brought seven claims for relief against Miller in his personal capacity, including—as relevant to this appeal—a claim for violating its federal substantive and procedural due process rights under 42 U.S.C. § 1983. Miller moved for summary judgment, arguing in relevant part that he is entitled to qualified immunity as to the due process claims.

After quoting at length from emails between City employees (which Miller maintains are privileged and that the district court should not have required to be disclosed), the district court determined that "[a] reasonable jury could infer from this evidence that the City decided it no longer wanted to contract with [DePaul,] then crafted a pretext, and Mr. Miller engaged in clearly arbitrary and unreasonable government conduct to that end." The district court concluded that Miller was not entitled to qualified immunity because DePaul had a clearly established property interest in its contracts with the City, and a reasonable jury could infer that Miller participated in the deprivation of this interest. Accordingly, the court denied his motion for summary judgment on the due process claims. Miller then filed this interlocutory appeal.

**STANDARD OF REVIEW**

"When evaluating a denial of summary judgment on the issue of qualified immunity, our review is limited to the purely legal issue whether the facts alleged . . . support a claim of clearly established law." *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (internal quotation marks omitted) (alteration in original). We review this legal issue de novo. *Hardwick v. County of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017). In the qualified immunity context, "we lack[] jurisdiction over an interlocutory appeal challenging the sufficiency of the evidence." *Alston*, 663 F.3d at 1098 (internal quotation marks omitted) (alteration in original). But we may exercise appellate jurisdiction under 28 U.S.C. § 1291 over an interlocutory appeal to consider "the purely legal issue" of whether Miller violated DePaul's "clearly established federal rights." *Id*.

**DISCUSSION**

Miller is entitled to qualified immunity unless he violated a clearly established statutory or constitutional right. Miller could not do so here because DePaul's claimed constitutionally protected property interest was not clearly established.

## I. When a Constitutionally Protected Property Interest is Clearly Established.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Constitutionally protected property "interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014) (internal quotation marks omitted). "This typically requires an individual to demonstrate that an existing law, rule, or understanding makes the conferral of a benefit mandatory." *Id.* (internal quotation marks omitted).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (internal citations and quotation marks omitted). When a rule is merely "suggested" by precedent it is not clearly established. *Id.* at 590. Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that

every reasonable official would know." *Id.* (internal citations and quotation marks omitted). "[R]easonableness is judged against the backdrop of the law at the time of the conduct," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), and "a case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

## II. DePaul's Asserted Interest Was Not Clearly Established.

DePaul's due process claims against Miller can succeed only if the protected property interest DePaul asserts was *clearly established* when it was allegedly violated. But the QRF statute is not clear about whether it creates a protected property interest in annually renewable city contracts. Nor has any Oregon court considered this question. The two cases cited by the district court did not involve QRFs at all. Therefore, even if those cases were precedential (which, as discussed below, they are not), they could not clearly establish a protected property interest in DePaul's QRF contracts with the City. Without more, we cannot say that DePaul's alleged property interest in its contracts has been "placed . . . beyond debate." *Ashcroft*, 563 U.S. at 741.

DePaul's arguments to the contrary are unpersuasive. DePaul asserts that it held a "*de facto* entitlement" that gives rise to a protected property interest in its contracts with the City because: *first*, DePaul was the only QRF providing unarmed security services in the area and by Oregon statute public agencies are required to purchase goods and services from a "QRF" when a QRF meets the agency's procurement requirements, *see* Or. Rev. Stat. §§ 279.835(5), 279.850(1)(a); and *second*, DePaul had a long-standing contractual relationship with the City. But DePaul cannot

construct a clearly established interest on its own.   We reverse the district court for three reasons.

*First*, the QRF statute does not clearly confer on DePaul a property interest in its contracts with the City.  The QRF statute states, in relevant part:

> [A] public agency that intends to procure a product or service on the procurement list that the Oregon Department of Administrative Services established under ORS 279.845 shall, in accordance with the department's rules, procure the product or service at the price the department establishes from a qualified nonprofit agency for individuals with disabilities, provided that the product or service is of the appropriate specifications and is available within the period the public agency requires.

Or. Rev. Stat. § 279.850(1)(a).  Various Oregon regulations expand on the statute, for example, by preventing agencies from "develop[ing] specifications that inhibit or tend to discourage" contracting with QRF providers, Or. Admin. R. 125-055-0010(1)(a), and urging agencies to "keep in mind the purpose of the law: to encourage and assist Individuals with Disabilities to achieve maximum personal independence in their communities through productive, gainful employment by assuring an expanded and constant market for [QRF] products and services," Or. Admin. R. 125-055-0010(3).

The interpretation of the QRF statute is ultimately a matter for the Oregon state courts.  But it is enough for present purposes that the statute and accompanying regulations do not unambiguously create the property

interest that DePaul claims, and so they cannot, without more, provide a clearly established right in DePaul's favor for purposes of qualified immunity.[2]

*Second*, DePaul points to no case authority for its claim here: that the QRF statute created a protected property interest in DePaul's annual contracts with the City. For purposes of qualified immunity, "the clearly established law at issue must be particularized to the facts of the case." *Perez v. City of Roseville*, 926 F.3d 511, 519 (9th Cir. 2019). The particular issue here, whether the Oregon QRF statute required the City to continue contracting with DePaul, is an unanswered question of state law.

DePaul points to no Oregon cases considering when, if ever, contracting with a QRF is mandatory. *See BWK, Inc. v. Dep't of Admin. Servs.*, 218 P.3d 156, 161 (Or. Ct. App. 2009) (noting in passing that the QRF statute "*requires* public agencies to purchase products and services from certain nonprofit providers," but providing the full text of the statute and referring to this statutory scheme as a "*preference* and exemption from competitive bidding*" (emphases added)); *see also Doyle v. City of Medford*, 606 F.3d 667, 671 (9th Cir. 2010) (looking first to how much discretion a local government has in issuing a statutory benefit to determine whether individuals had a property interest in that benefit, and, finding no Oregon courts construing the statute, certifying the question to the Oregon Supreme Court).

DePaul also points to no Oregon cases considering whether the QRF statute allows the City to end a contract if

---

**[2]** DePaul also ignores the fact that the City sought *armed* security services and specifically solicited DePaul, who neglected to apply for the new contract.

it seeks new services, such as armed security. And DePaul points to no Oregon cases considering whether a long-standing contract with the only qualified QRF in a particular area creates a protected property interest. *Compare with Perez*, 926 F.3d at 519 ("The contours of a right must be 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). These questions are fundamental to DePaul's claim that the statute and its long-standing contract "gave DePaul . . . a property interest for due process purposes."[3] But they remain unanswered—far from clearly established—and no reasonable official could be expected to know otherwise.

*Third*, the district court primarily relied on two District of Oregon cases to conclude DePaul's interest was clearly established—one decided in 2009 (*Grabhorn*), and the other decided in 2010 (*David Hill*). But our precedent dictates that *Grabhorn* and *David Hill* could not clearly establish a protected property interest in DePaul's contracts with the City because these cases do not even consider the Oregon QRF statute. In *Grabhorn*, the court recognized a constitutionally protected property interest in the plaintiff's status as a city-designated waste facility. *Grabhorn, Inc. v.*

---

[3] DePaul cites two Ninth Circuit cases, *Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008) and *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496 (9th Cir. 1990), to support its assertion that "[i]t was clearly established by 2016 that due process prevents government officials from depriving someone of a property interest for made-up and retaliatory reasons and thus denying them fair notice and an opportunity to be heard." But the separate threshold question here is whether DePaul had a clearly established property interest in the first place, not what actions due process demands or prevents once a property interest has been established.

*Metro. Serv. Dist.*, 624 F. Supp. 2d 1280, 1286–88 (D. Or. 2009). And in *David Hill*, the district court recognized a constitutionally protected property interest in a binding preliminary plat approval that the plaintiff received from a city. *David Hill Dev., LLC v. City of Forest Grove*, 688 F. Supp. 2d 1193, 1218–19 (D. Or. 2010). Neither case even mentions the QRF statute. So, even if the cases were binding precedent, neither is sufficient to "place[] the statutory or constitutional question" about whether the QRF statute created a protected property interest "beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

We have explained that "[w]e have been somewhat hesitant to rely on district court decisions" as clearly establishing law for purposes of qualified immunity. *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021). "[A]s the Supreme Court has pointed out, district court decisions— unlike those from the courts of appeals—do not necessarily settle constitutional standards, because a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Id*. (alterations and internal quotation marks omitted); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1016 (9th Cir. 2017) (rejecting the argument that one published and one unpublished district court decision, both factually distinguishable, constituted clearly established law); *Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (rejecting the argument that a published federal district court and a published lower state court decision clearly established a right). This case validates our hesitancy to rely on district court decisions for the qualified immunity analysis.

In sum, DePaul has not provided any precedent addressing Oregon's QRF statute or anything closely related.  While a case need not be "directly on point" to put "the statutory or constitutional question beyond debate," *Ashcroft*, 563 U.S. at 741, all of the cases relied on by DePaul and the district court are too far from "on point." There is simply no precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."  *Wesby*, 138 S. Ct. at 590.

We hesitate to opine further about the meaning of Oregon's QRF statute without additional guidance from Oregon courts.  But we need not do so to resolve Miller's appeal.  As Miller observes, "until the district court's orders *in this case*, no court had ever interpreted Oregon's QRF statute to create a protected property interest."  Given the dearth of law on this issue, we conclude that the property right asserted by DePaul was not clearly established at the time of the alleged violation.

## CONCLUSION

Miller is entitled to qualified immunity if his conduct did not violate DePaul's clearly established statutory or constitutional rights.  The district court found DePaul had a constitutionally protected property interest in its contracts with the City.  But because this interest was not clearly established law at the time of Miller's alleged violation, the district court erred by denying Miller qualified immunity on DePaul's due process claims.

The judgment of the district court denying Miller's motion for partial summary judgment on DePaul's due process claims is **REVERSED AND REMANDED** with instructions to dismiss those claims.